# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3528

_____

Paul Joseph Wieland; Teresa Jane Wieland

*Plaintiffs - Appellants*

v.

United States Department of Health and Human Services; Sylvia Mathews
Burwell, in her official capacity as the Secretary of the United States Department
of Health and Human Services; United States Department of the Treasury; Jacob J.
Lew, in his official capacity as the Secretary of the United States Department of
the Treasury; United States Department of Labor; Thomas E. Perez, in his official
capacity as the Secretary of the United States Department of Labor[1]

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 8, 2014
Filed: July 20, 2015

_____

Before WOLLMAN, LOKEN, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

---

[1]Secretary of Health and Human Services Sylvia Mathews Burwell is
substituted for her predecessor, Kathleen Sebelius. See Fed. R. App. P. 43(c)(2).

Paul and Teresa Wieland appeal from an order of the district court dismissing their complaint against the U.S. Departments of Health and Human Services, Treasury, and Labor and their respective Secretaries (collectively, HHS). The Wielands argue that the district court erred in concluding that they lacked standing to challenge certain provisions of the Patient Protection and Affordable Care Act (the ACA) and its implementing regulations, which they allege require them to obtain, and provide to their daughters, healthcare coverage for contraceptives, sterilization, and abortifacients (collectively, contraceptives) in violation of their sincerely held religious beliefs. We reverse and remand.

Paul Wieland is a member of the Missouri House of Representatives and obtains healthcare coverage for himself and his family through the Missouri Consolidated Health Care Plan (MCHCP), a group healthcare plan made available to him by his employer, the State of Missouri. Prior to August 1, 2013, MCHCP offered Paul Wieland an opportunity to opt out of coverage for contraceptives under state law. But the State and MCHCP discontinued offering the opportunity to opt out of such coverage following the decision in Missouri Insurance Coalition v. Huff, 947 F. Supp. 2d 1014, 1020 (E.D. Mo. 2013). In Huff, health insurers and insurance-industry groups sought a declaratory judgment that certain provisions of section 376.1199 of the Missouri Revised Statutes were preempted by the ACA. As relevant here, section 376.1199 required that health insurers offering plans in Missouri offer an employer a healthcare plan that excluded coverage for contraceptives if such coverage was contrary to the employer's religious beliefs. Huff, 947 F. Supp. 2d at 1017. An individual enrollee in a healthcare plan covering contraceptives was also permitted to opt out of that coverage based on his religious beliefs. Mo. Rev. Stat. § 376.1199.4. The district court in Huff held that these provisions of section 376.1199 were preempted by the ACA under the Supremacy Clause of the U.S. Constitution. The State of Missouri did not appeal the Huff decision, and on August

1, 2013, MCHCP placed the Wielands in a healthcare plan that included coverage for contraceptives.[2]

The Wielands, parents of three daughters, are committed to the health and well-being of their children and thus seek to ensure that their daughters have comprehensive healthcare coverage. As devout Roman Catholics, they believe that they cannot pay for or participate in a healthcare plan that includes coverage for contraceptives or provide such coverage to their daughters without violating their sincerely held religious beliefs.

The Wielands filed a complaint against HHS, generally contending that HHS's enforcement or threatened enforcement of certain provisions of the ACA caused MCHCP to place them in a healthcare plan that includes coverage for contraceptives, thereby forcing them to provide that coverage to their dependent daughters. The Wielands challenged provisions of the ACA and its implementing regulations that do not apply to individuals like themselves, but to "group health plan[s] and . . . health insurance issuer[s] offering group or individual health insurance coverage." 42 U.S.C. § 300gg-13(a)(4); 75 Fed. Reg. 41726, 41759 (noting application to group health plans and health insurance issuers offering group or individual health insurance coverage). They also challenged an interim final rule, which they defined in their complaint as "the Mandate," that "requires . . . all 'group health plan[s] and . . . health insurance issuer[s] offering group or individual health insurance coverage'" to provide coverage for contraceptives. 76 Fed. Reg. 46621; 45 C.F.R.

_____

[2]After the district court entered its order in Huff, the Supreme Court held in Burwell v. Hobby Lobby Stores, Inc., that the Religious Freedom Restoration Act of 1993 prohibited the government from enforcing the ACA and its implementing regulations that require "closely held corporations [to] provide health-insurance coverage for methods of contraception that violate the sincerely held religious beliefs of the companies' owners." 134 S. Ct. 2751, 2759 (2014). On remand, the district court must consider whether Huff remains good law after Hobby Lobby.

§ 147.130. The Wielands alleged that HHS's enforcement or threatened enforcement of "the Mandate" against them violated their rights under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §§ 2000bb to 2000bb-4; the Free Exercise, Free Speech, and Due Process Clauses of the U.S. Constitution; and the Administrative Procedure Act, 5 U.S.C. § 706, by forcing them to provide their daughters with coverage for contraceptives.

The Wielands sought a declaration "that the Mandate and [HHS's] enforcement of the Mandate against these Plaintiffs" violates their rights and "an order prohibiting [HHS] from enforcing the Mandate against these Plaintiffs insofar as it forces them to provide, fund or participate in the provision of contraceptives." They also sought a temporary restraining order (TRO) and a preliminary injunction "prohibiting [HHS] from requiring that the Plaintiffs' health benefit plan contain coverage for contraceptives." The Wielands claimed that if the requested relief were granted, the State and MCHCP would offer them a healthcare plan without coverage for contraceptives or an opportunity to opt out of such coverage.

HHS moved to dismiss the complaint for lack of standing. According to HHS, the Wielands lacked standing because they were challenging provisions of the ACA that did not apply to them and were seeking an injunction prohibiting HHS from enforcing the Mandate against MCHCP and, ultimately, the State of Missouri, neither of which was a party to the case. The district court agreed with HHS, and it concluded that even if it granted the Wielands the relief they sought, whether the Wielands would ultimately be offered a contraceptive-free healthcare plan was "linked with the independent discretionary actions of the State and MCHCP, neither of which [is a] part[y] to this action or before this Court." The court recognized that MCHCP had previously provided an opportunity to opt out of coverage for contraceptives, but that the provision under which that opt-out had been offered, section 376.1199, was invalidated in Huff—a decision that the State did not appeal. The court also rejected the Wielands' contention that if it were to enter the requested

-4-

injection, a different state statute, Missouri Revised Statutes section 191.724, would require the State and MCHCP to offer a contraceptive-free healthcare plan.

Because the district court concluded that the Wielands had not met their burden to establish standing, it dismissed their complaint with prejudice and without reaching the merits. The court also concluded that the Wielands' failure to establish standing was fatal to their motion for declaratory and injunctive relief, and it denied that motion without further analysis. The Wielands filed a notice of appeal from the district court's order and also moved for a preliminary injunction pending appeal. HHS opposed the motion for a preliminary injunction, and an administrative panel of this Court denied the motion.

We review *de novo* the district court's grant of a motion to dismiss for lack of standing, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. Hastings v. Wilson, 516 F.3d 1055, 1058 (8th Cir. 2008). Although courts generally must ignore materials outside the pleadings in deciding Rule 12 motions to dismiss, they "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 (8th Cir. 2012) (citations omitted).

Federal court jurisdiction is restricted to "'cases' and 'controversies.'" Flast v. Cohen, 392 U.S. 83, 94 (1968). A case or controversy exists only if a plaintiff "personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone Realtors v. Vill. of Bellwood, 441 U.S. 91, 99 (1979). A plaintiff bears the burden of showing (1) that he has suffered an "injury in fact" that is "actual or imminent, not 'conjectural or 'hypothetical'"; (2) that the injury is causally connected to the defendant's allegedly illegal conduct and not to the "independent action of some third party not before the court"; and (3) that "it [is] 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by

-5-

a favorable decision.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (citations omitted).  A plaintiff's burden to establish standing depends on the stage of litigation, and "[a]t the pleading stage, general factual allegations . . . may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. at 561 (citations omitted).

The Wielands first argue that the district court erred in concluding that they did not establish a causal connection between their injury and the Mandate sufficient to satisfy the causation element of standing.  They argue that their pleadings adequately alleged a chain of causation that runs directly from the Mandate to their placement in a healthcare plan that includes coverage for contraceptives.  The district court erred, according to the Wielands, because there was no "independent discretionary action" by the State or MCHCP—MCHCP placed them in a healthcare plan that included coverage for contraceptives, thereby causing their injury, as a direct result of HHS's threatened enforcement of the Mandate against the State and MCHCP.  We agree.

The Wielands alleged in their complaint that "[b]ecause of the Mandate . . . MCHCP now states that Mr. Wieland's insurance plan must provide" coverage for contraceptives.  They also alleged that "upon information and belief," they "cannot obtain insurance coverage without coverage for contraceptives . . . from any source." Thus, they contended, "[t]he Mandate forces [them] to provide coverage for or otherwise participate in the provision of" coverage for contraceptives "against [their] religiously informed consciences."  The crux of these general allegations is that absent the Mandate, the Wielands would have a contraceptive-free healthcare plan, whether from MCHCP or from a private insurance issuer.

HHS argues that the Mandate cited by the Wielands as the source of their injury imposes no direct obligation or requirement on them and that the district court did not err in concluding that the Wielands failed to satisfy the causation element of standing.

An injury may be "fairly traceable" to a defendant for causation purposes even when that defendant's actions are not "the very last step in the chain of causation." Bennett v. Spear, 520 U.S. 154, 168-69 (1997). "While . . . it does not suffice if the injury complained of is 'th[e] result [of] the *independent* action of some third party not before the court,' that does not exclude injury produced by determinative or coercive effect upon the action of someone else." Id. at 169 (internal citations omitted).

Here, the Wielands' injury is fairly traceable from HHS's enforcement or threatened enforcement of the Mandate, to MCHCP, to the Wielands. This is not a case where the "unfettered choices made by independent actors" operate to sever the chain of causation. Lujan, 504 U.S. at 562. The Mandate challenged in the Wielands' complaint requires group health plans and health insurance issuers to include coverage for contraceptives in all healthcare plans, and it is the Mandate that caused the State and MCHCP to eliminate contraceptive-free healthcare plans, to place the Wielands in a healthcare plan that included this coverage, and thus to cause injury to the Wielands.

HHS contends that it was not the Mandate that caused MCHCP to eliminate contraceptive-free healthcare plans and to place the Wielands in a healthcare plan that includes coverage for contraceptives. Rather, HHS argues, it was the State's independent and discretionary decision not to challenge the ruling in Huff that caused MCHCP to eliminate contraceptive-free healthcare plans. We are not persuaded. In our view, the Huff decision merely put the State and MCHCP on notice that HHS's enforcement or threatened enforcement of the Mandate would result in significant penalties in the event that MCHCP continued offering contraceptive-free healthcare plans under section 376.1199. Indeed, the MCHCP board of trustees, after acknowledging that Huff clarified how the ACA would be applied, concluded that MCHCP could no longer offer contraceptive-free healthcare plans that were "in direct conflict with the 'contraceptive mandate' in the" ACA without "put[ting] MCHCP and its assets at risk." Because MCHCP did not qualify for an exemption or

accommodation under the ACA, the board concluded that MCHCP was "subject to the same provisions of federal law that require the offering of contraceptives," that MCHCP was required to eliminate all contraceptive-free healthcare plans, and that "affected individuals" must be transferred "from the plan they chose without contraception to the same plan with contraception."[3]  The Huff decision simply clarified for the State and MCHCP that the section 376.1199 opt-out provisions were preempted by federal law; it was the federal law itself—the Mandate—that was the but-for cause of the change in the Wielands' healthcare plan.  Moreover, as earlier stated, the continued validity of the Huff decision is a matter that must be addressed in light of the Supreme Court's decision in Hobby Lobby.  If Hobby Lobby overruled Huff, a question we leave for the district court in the first instance, the section 376.1199 opt-out provision would again be available, and MCHCP would be required to comply with that statutory provision.

MCHCP eliminated contraceptive-free healthcare plans and transferred the Wielands into a plan including such coverage to avoid violating the Mandate and "put[ing] . . . its assets at risk."  Keeping in mind that at this stage of the litigation we "must accept all factual allegations in the complaint as true and draw all inferences" in favor of the Wielands, we are satisfied that the Wielands have alleged sufficient facts to show that they were placed in a healthcare plan that includes coverage for contraceptives, not because of "independent discretionary actions of the State and MCHCP," but because of HHS's enforcement or threatened enforcement of the

---

[3]Exempted from the Mandate are "grandfathered" plans, 45 C.F.R. § 147.140; religious employers, id. § 147.131(a); and employers with fewer than 50 full-time employees, as long as the employer does not offer *any* healthcare coverage, see 26 U.S.C. § 4980H.  Certain religious nonprofit organizations may also qualify for an accommodation from the Mandate, 45 C.F.R. § 147.131(b), as may closely held corporations whose owners have religious objections to the Mandate, see Hobby Lobby, 134 S. Ct. at 2759-60.  MCHCP does not qualify for these, or any other, exemptions or accommodations and is thus subject to the Mandate.

Mandate. There was no discretion involved in the decision. The State and MCHCP were required by federal law, by the Mandate, to include coverage for contraceptives in all healthcare plans they offered—including the Wielands' healthcare plan. The undeniable effect of the Mandate upon the Wielands is that their healthcare plan must now include coverage for contraceptives. We therefore conclude that the Wielands have established a sufficient causal connection between their injury and HHS's enforcement of the Mandate to satisfy the causation element of standing.

In addition to establishing a sufficient causal connection between the Mandate and their alleged injury, the Wielands were required to allege facts that, if true, would show that it is "likely" and not merely "speculative" that their injury would be redressed if they were granted the remedy they seek. See Lujan, 504 U.S. at 561. The Wielands claim that an injunction prohibiting HHS from enforcing the Mandate against MCHCP would result in MCHCP offering them a contraceptive-free healthcare plan under section 191.724 of the Missouri Revised Statutes. This section was not challenged by the plaintiffs in Huff, and it apparently remains in effect in Missouri. We conclude that the Wielands have sufficiently alleged that it is more than merely speculative that their injury would be redressed if they were granted the remedy they seek.

HHS argued before the district court that MCHCP's decision to eliminate contraceptive-free healthcare plans "would not be illegal under [section] 191.724.2 because that statute does not prohibit employers or insurers from choosing to offer only a health plan that covers contraception." The Wielands invoked section 191.724.4, however, which states:

> No governmental entity, . . . or entity acting in a governmental capacity shall discriminate against or penalize an employee, . . . employer, health plan provider, health plan sponsor, . . . or any other person or entity because of such employee's, . . . employer's, health plan provider's, health plan sponsor's, . . . or other person's or entity's unwillingness,

based on religious beliefs or moral convictions, to obtain or provide coverage for, pay for, [or] participate in, . . . abortion, contraception, or sterilization in a health plan.

Mo. Rev. Stat. § 191.724.4. The Wielands contend that under subsection 4, MCHCP, an entity created by the State and acting in a governmental capacity, is prohibited from discriminating against them by refusing to offer them a contraceptive-free healthcare plan despite their religious objections to coverage for contraceptives. They argue that if MCHCP offers State employees a healthcare plan that includes coverage for contraceptives, but refuses to offer a healthcare plan that excludes such coverage to employees who have a religious objection, "[t]here could be no more obvious case of discrimination" against the employees with religious objections to such coverage. Moreover, they argue, because section 191.724.1 states that "[t]he rights guaranteed under [section 191.724] are in addition to the rights guaranteed under . . . section 376.1199," the provision that was invalidated in <u>Huff</u>, section 191.724 provides a separate basis on which MCHCP must provide them with a contraceptive-free healthcare plan. Thus, the Wielands argue, if the requested injunction is granted, section 191.724 requires that MCHCP offer the Wielands a contraceptive-free healthcare plan.

HHS argues that if section 191.724 required MCHCP to offer contraceptive-free healthcare plans to employees with religious objections, MCHCP would not have eliminated those plans after the <u>Huff</u> decision invalidated the section 376.1199 opt-out provision. HHS points to an emergency rescission issued by the MCHCP board of trustees after the <u>Huff</u> decision stating that after <u>Huff</u>, "there is no longer a state statutory requirement on which to base" an opt-out opportunity. But the Wielands argue that MCHCP relied on section 191.724 when it offered them the opportunity to opt out of coverage for contraceptives. The MCHCP 2013 Open Enrollment Worksheet, which provided the mechanism for employees to exercise their opt-out rights, specifically refers to section 191.724 as the provision under which "every

-10-

employee . . . has the right to decline or refuse coverage for contraception" if such coverage is "contrary to an employee's religious beliefs."

We conclude that it is more than merely speculative that the Wielands' injury would be redressed if they were granted the injunctive relief they seek. With the benefit of the requested injunction against HHS's enforcement of the Mandate against MCHCP, MCHCP would be assured that it could safely proceed under section 191.724 to provide the Wielands with an opportunity to opt out of coverage for contraceptives. And if Hobby Lobby overruled Huff, the section 376.1199 opt-out provision would again be available. Before the threatened enforcement of the Mandate, the State and MCHCP were willing to offer the Wielands a contraceptive-free healthcare plan, which is persuasive evidence that they would do so again if the Wielands obtain their requested relief. We conclude therefore that the Wielands have alleged a sufficient basis on which to conclude that it is "likely" and not merely "speculative" that their injury would be redressed if they were granted the injunctive relief they seek.

The judgment of the district court is reversed, and the case is remanded to the district court for further proceedings consistent with this opinion. We express no opinion on the merits of the Wielands' claims. See Red River Freethinkers v. City of Fargo, 679 F.3d 1015, 1023 (8th Cir. 2012) ("The standing inquiry is not . . . an assessment of the merits of a plaintiff's claim.").

_____