# United States Court of Appeals

## For the Eighth Circuit

_____

No. 15-3075

_____

Basim Sabri; Marty Schulenberg; Mohamed Cali; Jay Webb; Zachary Metoyer

*Plaintiffs - Appellants*

v.

Whittier Alliance, a Minnesota not-for-profit corporation; City of Minneapolis, a municipal corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: June 16, 2016
Filed: August 19, 2016

_____

Before MURPHY, BRIGHT, and SHEPHERD, Circuit Judges.

_____

MURPHY, Circuit Judge.

Five members of Whittier Alliance, a private neighborhood organization, brought this action under 42 U.S.C. § 1983 against the City of Minneapolis and the Alliance itself, alleging violation of their First Amendment rights. They claim that the city "commanded and encouraged" the members of the Alliance to adopt an antidefamation bylaw which unconstitutionally restricted the members' freedom of

speech.  The district court[1] granted the defendants' motions to dismiss for lack of standing and state action.  We affirm.

## I.

The Whittier Alliance is a private nonprofit organization in the Whittier neighborhood in Minneapolis.  The organization holds community meetings, hosts events and activities, and presents forums and seminars intended to educate the neighborhood about civic engagement.  The organization receives funds from private grants, donations, and the city of Minneapolis through the Community Participation Program (CPP).  To receive CPP funding, a neighborhood organization must be incorporated, have bylaws and an elected board of directors, and "[e]nsure that membership in the organization is open to all residents."  If an organization's bylaws do not comply with the CPP guidelines, the city may recommend that the organization revise its bylaws and may withdraw CPP funding.

In 2014, Basim Sabri, Marty Schulenberg, Mohamed Cali, Jay Webb, and Zachary Metoyer (applicants) submitted applications to serve on the Alliance board.  The applicants were members of Whittier Alliance and in past years had voiced their opposition to what they considered to be racist policies of the board.  The executive director of the Alliance rejected the applications of Sabri, Schulenberg, Cali, and Webb on the ground that they had not had a documented history of engagement with the organization.

Appellants filed a grievance with the board, claiming that it had implemented policies deliberately designed to exclude racial minorities from leadership positions and that it lacked authority to reject their applications based on qualifications not

---

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

-2-

contained in the existing bylaws. The board denied the grievance, and appellants sought review through the CPP grievance process. The city also denied their grievance but "require[d] Whittier Alliance to revise its bylaws to be more explicit on its election process and the qualifications for board candidacy." The city assigned neighborhood support specialist Michelle Chavez to work with the Alliance on its bylaws in advance of the next annual meeting.

On January 12, 2015 the membership of the Whittier Alliance voted to approve amended bylaws which included a new requirement for board candidates to show ongoing participation with the organization and attendance at meetings during the current year. The Alliance also approved an antidefamation bylaw requiring that board candidates must "not have committed an act of malice or defamation against the Whittier Alliance or any member of the Board of Directors or [have] otherwise disrupte[d] the aims and purposes of the corporation."

Appellants did not submit applications for the board election held on March 26, 2015. They claim that their decision not to apply was based on the discriminatory nature of the antidefamation bylaw which they argue was intended to exclude them from running for board positions because of their critical speech about the incumbent board. To challenge the new bylaw, appellants filed this § 1983 action alleging that the Whittier Alliance and the city of Minneapolis had adopted policies designed to deprive them of their rights under the First Amendment and Minn. Stat. § 363A.17(3). The district court dismissed the case, concluding that appellants lacked standing and that the Whittier Alliance was not acting under color of state law. Appellants then brought this appeal contending they have standing to challenge the constitutionality of the antidefamation bylaw.

II.

We review de novo a district court's grant of a motion to dismiss, "accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." Topchian v. JPMorgan Chase Bank, N.A., 760 F.3d 843, 848 (8th Cir. 2014) (internal quotation marks omitted).

The initial question is whether appellants have standing to raise their First Amendment claims. For standing a plaintiff must show that "he or she has suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Constitution Party of South Dakota v. Nelson, 639 F.3d 417, 420 (8th Cir. 2011) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). In addition, a plaintiff must show that such injury is "fairly traceable" to the challenged conduct and that it is "'likely [to] be redressed by a favorable decision.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (quoting Lujan, 504 U.S. at 560–61). A plaintiff's burden to establish standing depends on the stage of litigation, and at the motion to dismiss stage, "we 'presum[e] that general allegations embrace those specific facts that are necessary to support the [plaintiff's] claim.'" Wieland v. U.S. Dep't of Health and Human Serv., 793 F.3d 949, 954 (8th Cir. 2015) (quoting Lujan, 504 U.S. at 561).

Appellants argue that the Alliance's antidefamation bylaw is unconstitutionally overbroad because it gives the board unfettered discretion to disqualify any board candidate it determines has committed an act of malice or defamation or otherwise disrupted the aims and purposes of the organization. "A plaintiff who has established constitutional injury under a provision of a statute as applied to his set of facts may also bring a facial challenge, under the [First Amendment] overbreadth doctrine, to vindicate the rights of others not before the court under that provision." CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1271 (11th Cir. 2006); see Shuttlesworth v. City of Birmingham, 394 U.S. 147, 150–52 (1969) (valid facial

overbreadth claim which challenged ordinance delegating "virtually unbridled and absolute" discretionary power to city commission).

Here, the antidefamation bylaw restricts appellants' ability as members of the Alliance to vote for the board candidate of their choice. We held in McLain v. Meier that the appellant had standing "in his capacity as a voter" to challenge the constitutionality of North Dakota's ballot access laws. See 851 F.2d 1045, 1048 (8th Cir. 1988). In that case, we concluded that the plaintiff had suffered "injury as a voter" because "his ability to vote for the candidate of his choice" had been restricted by the ballot access laws. See id.; see also Miller v. Moore, 169 F.3d 1119, 1123 (8th Cir. 1999) (plaintiffs had standing as voters to challenge state ballot access law because it would "diminish[] the likelihood that . . . . their choice [would] prevail"). While the plaintiff had attempted to run for office, the state laws had prevented him from appearing on the ballot, and thus he was unable to vote for himself. See McLain, 851 F.2d at 1048.

Similarly in this case, the antidefamation bylaw prevents appellants from voting for themselves or any other candidates who might be considered malicious critics by the board. Although the primary impact of the bylaws may be on the board candidates, "the rights of voters and the rights of candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters." Bullock v. Carter, 405 U.S. 134, 143 (1972). Although appellants do not directly allege voter standing in their complaint, we may look to matters outside the pleadings to determine whether standing exists. See Osborn v. United States, 918 F.2d 724, 728 n.4 (8th Cir. 1990). Here, appellants allege that they are "members" of Whittier Alliance, see Compl. ¶ 2, and the bylaws permit members to vote in Alliance elections, see Whittier Alliance Bylaws, Art. III, Sec. 3. Drawing all reasonable inferences in favor of appellants, we conclude that appellants have suffered sufficient injury as voting members of the Whittier Alliance. See Topchian, 760 F.3d at 848; Wieland, 793 F.3d at 954.

-5-

Appellants have also satisfied the other two required elements to establish standing. Their asserted injury may be traced to the objected bylaw and could be redressed by the relief they seek. See Braden, 588 F.3d at 591. Since they have standing to raise an as applied challenge to the antidefamation bylaw, they may also challenge its overbreadth in a facial challenge. See CAMP Legal Defense Fund, 451 F.3d at 1271. Nevertheless, the Whittier Alliance contends that appellants failed to exhaust their administrative remedies. Appellants concede they did not file a grievance with the city regarding the 2015 bylaws, annual meeting, or election, but they point out that a party generally need not have exhausted state remedies before bringing a § 1983 claim. See Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 500 (1982). We conclude that appellants have sufficient standing to challenge the constitutionality of the bylaw.

### III.

To establish a § 1983 claim, appellants must also show that they have been deprived of a constitutional right by a person acting under color of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 942 (1982). A private party is considered a state actor if the alleged deprivation was "caused by the exercise of some right or privilege created by the [s]tate or by a rule of conduct imposed by the state or by a person for whom the [s]tate is responsible." Id. at 937. A state's "[m]ere approval of or acquiescence in the initiatives of a private party" does not amount to state action. Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

Appellants claim that the city was responsible for the deprivation of their rights because it commanded and encouraged the Alliance by "exercis[ing] coercive power" or overtly or covertly "significant[ly] encourag[ing]" it to act unconstitutionally. See id. Appellants argue that the city encouraged the adoption of the 2015 discriminatory bylaw by adopting a grievance procedure and requiring neighborhood organizations to have democratic processes and elections as a "precondition" for the receipt of

public funds. Mere regulation does not convert a private organization's actions into state action, however, "even if [the regulation is] extensive and detailed." See Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982) (internal quotation marks omitted). Furthermore, the fact that the city required Whittier Alliance to have open and democratic processes does not show that the city encouraged the Alliance to discriminate. Cf. Adickes v. S.H. Kress Co., 398 U.S. 144, 150–53 (1970).

Appellants also argue that the city used its coercive power to compel Whittier Alliance to adopt the antidefamation bylaw by requiring it to clarify its bylaws after appellants filed their 2014 grievance. We conclude that the recommendation to amend the bylaws was not coercive, however, because the city did not and could not mandate the passage of any particular bylaw. It could at most withhold funds if it perceived a conflict between the bylaws and the CPP guidelines. See Chavez Aff. ¶ 2, March 31, 2015; Sarf Aff., March 31, 2015, Ex. 1, The 2014-2016 Community Participation Program Guidelines, I(B) ¶ 1 & IV(A) ¶ 4. The receipt of public funds did not convert the private actions by the Whittier Alliance into state action. See Rendell-Baker, 457 U.S. at 840.

Finally, appellants contend that the city used its coercive power to assign its own employee Michelle Chavez to participate in rewriting the Alliance bylaws. Chavez reviewed the proposed bylaws for the purpose of identifying any conflict between them and the CPP guidelines, but she did not propose any amendments to them. Her review fell well below any threshold showing that the city had "significant[ly] encourage[d]" the Alliance to pass a particular bylaw. See Blum, 457 U.S. at 1004.

IV.

We conclude that the adoption of the 2015 bylaws by the Whittier Alliance did not amount to state action. We therefore affirm the district court's judgment.

SHEPHERD, concurring in part and dissenting in part.

I concur with the court's decision to affirm the district court's dismissal of the Appellants' complaint, however I would base the dismissal on the Appellants' lack of standing. Thus, I dissent from section II of the majority's opinion.

Appellants do not have standing in this matter because they failed to apply to run for Board of Director positions after the adoption of the contested bylaw. See Bernbeck v. Gale, No. 15-1983, 2016 WL 3769481 at *3 (8th Cir. July 14, 2016) (holding plaintiff lacked standing when he failed to perform "the acts necessary to bring his injury into existence" when he did not submit a signed petition and had it rejected for failure to comply with Nebraska's signature-distribution requirement); Mo. Roundtable for Life v. Carnahan, 676 F.3d 665, 673 (8th Cir. 2012) (concluding plaintiff lacked standing because it did not have a concrete and particularized injury where plaintiff failed to allege or present evidence that "it ever tried to obtain signatures in support of its proposals, that it was ever prevented from circulating petitions, that the official ballot titles confused or misled voters, or that any voters were unable or unwilling to consider Roundtable's proposals"); Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1161 (8th Cir. 2008) ("[I]f a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition.").

Furthermore, Appellants do not assert standing on the basis of their capacity as voters in their complaint, in response to the motion to dismiss, or in their briefing on appeal. See Bernbeck, No. 15-1983, 2016 WL 3769481 at *4 (rejecting voter status as a basis for standing where the court could find "[n]owhere in the complaint nor in the record . . . any averment or evidence that [the plaintiff] is registered to vote.").

Accordingly, finding that Appellants do not have standing, I agree with the district court that the complaint should be dismissed on that basis, and I would not reach the merits of the 42 U.S.C. § 1983 claim.

_____