# United States Court of Appeals
### For the Eighth Circuit

_____

No. 16-3650

_____

Ronald Calzone,

*Plaintiff - Appellant,*

v.

Josh Hawley, in his official capacity as Attorney General for the State of Missouri;
Sandra K. Karsten, in her official capacity as Superintendent of the Missouri State
Highway Patrol; Eric Greitens, in his official capacity as Governor of the State of
Missouri,[1]

*Defendants - Appellees.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 6, 2017
Filed: August 7, 2017

_____

Before COLLOTON and BENTON, Circuit Judges, and GERRARD,[2] District
Judge.

_____

[1] Attorney General Hawley, Superintendent Karsten, and Governor Greitens are
automatically substituted for their predecessors under Federal Rule of Appellate
Procedure 43(c)(2).

[2] The Honorable John M. Gerrard, United States District Judge for the District
of Nebraska, sitting by designation.

COLLOTON, Circuit Judge.

Ronald Calzone sued three state officials to challenge provisions of Missouri law that authorize roving stops of certain vehicles for inspection without suspicion. The district court held that the statutes were not unconstitutional on their face. The court also ruled that Calzone's as-applied challenge was not adequately pleaded, because the defendants could not be sued in their official capacities under 42 U.S.C. § 1983. We affirm the court's conclusion that the statutes are not facially unconstitutional, but we conclude that the as-applied challenge against the superintendent should have been considered on the merits, so we remand for further proceedings.

I.

In June 2013, Missouri state highway patrol corporal J.L. Keathley stopped Calzone while he was driving his dump truck on United States Highway 63 in Phelps County, Missouri. Keathley asked Calzone if he could inspect the truck, but Calzone refused. Keathley then explained that Mo. Rev. Stat. § 304.230 authorized him to stop commercial vehicles and inspect them whether or not he had probable cause. Keathley warned Calzone that if he did not submit to an inspection, then Keathley would issue him a citation. Calzone still refused, so Keathley issued him a citation for failure to submit to a commercial vehicle inspection. The Phelps County prosecutor later abandoned the action against Calzone.

Calzone then sued the governor of Missouri, the Missouri attorney general, and the superintendent of the Missouri state highway patrol under 42 U.S.C. § 1983. He sought a declaratory judgment that Mo. Rev. Stat. § 304.230.1, .2, and .7 are unconstitutional on their face and as applied to him. He asked for a permanent

injunction against the enforcement of these provisions, for one dollar in nominal damages, and for costs and attorney's fees.

The district court granted summary judgment for the officials on Calzone's facial challenge and granted judgment on the pleadings for the officials on the as-applied challenge. The court concluded that the challenged provisions were not facially unconstitutional, because they could be applied constitutionally to participants in the closely regulated commercial trucking industry. The court concluded that Calzone's as-applied challenge failed because he could not sue the governor, the attorney general, or the superintendent under § 1983. The court reasoned that state officials acting in their official capacities are not "persons" subject to suit under the statute. We review the district court's rulings *de novo*.

II.

A threshold question is whether there is jurisdiction over Calzone's action against each of the defendants—the governor, the attorney general, and the superintendent. Calzone adequately alleges that he was injured by a seizure and is likely to be injured in the future. But Article III standing to sue each defendant also requires a showing that each defendant caused his injury and that an order of the court against each defendant could redress the injury. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Because the defendants are state officials, Calzone also must show that the action is not barred by state sovereign immunity arising from the Eleventh Amendment. A suit for injunctive or declaratory relief avoids this immunity if the official has some connection to the enforcement of the challenged laws. *See Ex parte Young*, 209 U.S. 123, 157 (1908). In a case like this one, the two inquiries are similar: "[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing

requires the named defendants to possess authority to enforce the complained-of provision." *Dig. Recognition Network v. Hutchinson*, 803 F.3d 952, 957-58 (8th Cir. 2015) (alteration in original) (quotation omitted).

Calzone plainly has standing to sue the superintendent. For purposes of the Eleventh Amendment and *Ex parte Young*, a state official's requisite connection with the enforcement of a statute may arise out of "the general law" or be "specially created by the act itself." 209 U.S. at 157. Section 304.230.1 specifically authorizes the superintendent to "promulgate rules and regulations relating to the implementation of the provisions" of § 304.230, so she is subject to suit on claims for injunctive and declaratory relief. Her directions that patrol officers should implement the statute by conducting vehicle inspections cause Calzone's injury, and an order directing her to cease and desist would redress the injury.

Calzone's claims against the governor, on the other hand, do not present a case or controversy. No provision in Chapter 304 or the statutes defining his executive authority specifically authorizes the governor to enforce the vehicle inspection statutes. *See* Mo. Rev. Stat. § 26.010-.225. The Missouri Constitution confers upon the governor the duty to "take care that the laws are distributed and faithfully executed," Mo. Const. art. IV, § 2, but such a general executive responsibility is an insufficient connection to the enforcement of a statute to avoid the Eleventh Amendment. *See Fitts v. McGhee*, 172 U.S. 516, 530 (1899). For similar reasons, the governor has not caused any injury to Calzone, and there is no Article III case or controversy between Calzone and the governor.

The third defendant, the attorney general, has certain law enforcement authority, but his relationship to vehicle inspections is also tangential. The attorney general is authorized to aid prosecutors in the discharge of their duties when so directed by the governor and to sign indictments when so directed by a trial court. Mo. Rev. Stat. § 27.030. Calzone has pointed to no authority, however, suggesting

that the attorney general has any role in causing vehicle inspections by the highway patrol. Calzone seeks to enjoin state officials from seizing him and his vehicle for inspection pursuant to Chapter 304 of the Revised Statutes. If the superintendent is enjoined from implementing rules that cause patrol officers to conduct the disputed seizures, then the seizures will end, and Calzone's injury will be redressed. Calzone does not seek to enjoin a statute that subjects him to imminent prosecution by the attorney general, *see Ex parte Young*, 209 U.S. at 155-56, but rather to prevent imminent inspections by officers of the highway patrol at the superintendent's direction. There is thus no case or controversy between Calzone and the attorney general.

For these reasons, Calzone has standing to sue the superintendent, and his claims against her for injunctive and declaratory relief are not barred by the Eleventh Amendment. The claims against the governor and the attorney general were properly dismissed, because there is no case or controversy between Calzone and those officials.

III.

On the merits, Calzone argues that Mo. Rev. Stat. § 304.230.1, .2, and .7 are facially unconstitutional, because they authorize roving stops of vehicles even if the stops are not supported by probable cause. To establish that these statutes are unconstitutional on their face, Calzone must show that there is no set of circumstances under which the laws would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The challenged subsections of Mo. Rev. Stat. § 304.230 authorize certain law enforcement officers to stop and inspect commercial motor vehicles for certain delineated purposes. Subsection 304.230.1 provides that members of the Missouri state highway patrol "shall have the authority, with or without probable cause to

-5-

believe that the size or weight is in excess of that permitted by sections 304.170 to 304.230, to require the driver . . . to stop, drive, or otherwise move to a location to determine compliance with [those] sections." Subsection 304.230.2 authorizes "any highway patrol officer . . . to stop any [commercial motor vehicle] upon the public highway for the purpose of determining whether such vehicle is loaded in excess of the provisions of sections 304.170 to 304.230." Subsection 304.230.7 gives the superintendent of the Missouri state highway patrol the power to "appoint members of the patrol who are certified under the commercial vehicle safety alliance with the power" to stop operators in order "to conduct commercial motor vehicle and driver inspections . . . to determine compliance with commercial vehicle laws, rules, and regulations." As relevant, Missouri defines a commercial motor vehicle as "a motor vehicle designed or regularly used for carrying freight and merchandise." Mo. Rev. Stat. § 301.010(7).

In *New York v. Burger*, 482 U.S. 691 (1987), the Supreme Court held that a warrantless search of property in certain "closely regulated industries" is constitutional if three criteria are met: (1) the regulatory scheme advances a substantial government interest; (2) warrantless inspections are necessary to further the regulatory scheme; and (3) the rules governing the inspections must be a constitutionally adequate substitute for a warrant, *i.e.* the rules must provide notice that property may be searched for a specific purpose and must limit the discretion of the inspecting officers. *Id.* at 702-03.

This court has held that commercial trucking is a closely regulated industry within the meaning of *Burger*. *United States v. Ruiz*, 569 F.3d 355, 356-57 (8th Cir. 2009); *United States v. Mendoza-Gonzalez*, 363 F.3d 788, 794 (8th Cir. 2004). *Ruiz* applied *Burger* to uphold an Arkansas statute that authorized warrantless inspections of commercial trucks. The court determined that "warrantless inspections of commercial trucks advance a substantial governmental interest and are necessary" to

further the regulatory scheme. 569 F.3d at 357. The court also concluded that the statute provides a permissible substitute for a warrant. *Id.*

A similar analysis shows that the Missouri statutes are constitutional on their face. Missouri's definition of "commercial motor vehicle" covers commercial trucks. Missouri has a substantial interest in ensuring the safety of the motorists on its highways and in minimizing damage to the highways from overweight vehicles. *Ruiz*, 569 F.3d at 357 (citing cases); *State v. Rodriguez*, 877 S.W.2d 106, 109 (Mo. 1994). Given the transitory nature of commercial trucks, *United States v. Fort*, 248 F.3d 475, 481 (5th Cir. 2001), and the difficulty of detecting violations of the regulatory scheme by routine observation, effective enforcement would be nearly impossible without impromptu, warrantless searches. *United States v. Maldonado*, 356 F.3d 130, 136 (1st Cir. 2004). The challenged subsections are also a permissible substitute for a warrant. They provide notice to commercial truck drivers of the possibility of roadside inspection by a designated law enforcement officer, and they limit the scope of the officer's inspections to an examination solely for regulatory compliance. *See Ruiz*, 569 F.3d at 357. We therefore conclude that Mo. Rev. Stat. § 304.230.1, .2, and .7 can be applied constitutionally to participants in the commercial trucking industry under *Burger*, and the provisions are not unconstitutional on their face.

Calzone also contends that the challenged subsections are unconstitutional as applied to him, because he is not a member of the commercial trucking industry. The district court concluded that Calzone could not bring an as-applied claim against the superintendent, because this official is not a "person" under § 1983. That conclusion is correct as to Calzone's claim for damages. A suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). But Calzone can sue the superintendent in her official capacity for declaratory and injunctive relief, because those claims are treated as an action against the official

personally and not against the State. *See id.* at 71 n.10; *Ex parte Young*, 209 U.S. at 159-60. Therefore, it was error for the court to dismiss Calzone's as-applied claims against the superintendent for declaratory and injunctive relief based on the meaning of "person" under § 1983.

The merits of Calzone's as-applied challenge were not well developed in the briefs on appeal, and they are best addressed by the district court in the first instance. Calzone contends that he is not subject to all of the Federal Motor Carrier Safety Regulations, 49 C.F.R. pts. 390-97, because his dump truck is a "covered farm vehicle" under federal law. *See* 49 C.F.R. § 390.5. The State, at oral argument, replied that Calzone is indeed involved in the closely regulated commercial trucking industry, because Missouri law incorporates the federal regulations for trucks of a certain weight. *See* Mo. Rev. Stat. § 307.400.1(2), .5. The parties have not addressed, however, whether Missouri's incorporation of the federal regulations also incorporates the exceptions for farm vehicles that are contained within those federal regulations, or whether Missouri's own exceptions at § 307.400.1(2) and .5 are exclusive. Nor have the parties discussed whether a partial exemption from the federal regulations removes an operator from the realm of the closely regulated commercial trucking industry. The district court may need to consider these questions and others to resolve Calzone's as-applied challenge.

\* \* \*

For the foregoing reasons, we affirm the district court's dismissal of Calzone's facial challenge to Mo. Rev. Stat. § 304.230. We affirm the dismissal of Calzone's as-applied claims against the governor and the attorney general and the dismissal of his claim for damages against the superintendent. We reverse the dismissal of Calzone's as-applied claim against the superintendent for declaratory and injunctive relief and remand for further proceedings.

_____