# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 18-1674

———————————————

Ronald Calzone,

*Plaintiff - Appellant,*

v.

Eric T. Olson, in his official capacity as Superintendent of the Missouri State
Highway Patrol,

*Defendant - Appellee.*[1]

——————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————

Submitted: January 16, 2019
Filed: July 26, 2019

——————

Before SMITH, Chief Judge, COLLOTON and ERICKSON, Circuit Judges.

——————

COLLOTON, Circuit Judge.

Ronald Calzone seeks a ruling that the Missouri State Highway Patrol is
forbidden to stop and inspect his 54,000-pound dump truck, used in furtherance of

[1]Eric T. Olson is automatically substituted for his predecessor under Federal
Rule of Appellate Procedure 43(c)(2).

his private commercial venture, without probable cause. The district court[2] denied his request for declaratory and injunctive relief. We likewise conclude that Calzone is a member of the closely regulated commercial trucking industry, and that the patrol's random stops and inspections of his truck would comport with the Fourth and Fourteenth Amendments. We therefore affirm the judgment.

Calzone operates a dump truck in support of his horse and cattle ranch, Eagle Wings Ranch. He holds a Missouri-issued commercial driver's license, and his truck has Missouri-licensed plates marking it as a 54,000-pound vehicle for "local" commercial use. A "local commercial motor vehicle" includes "a commercial motor vehicle whose property-carrying operations are confined solely to the transportation of property owned by any person who is the owner or operator of such vehicle to or from a farm owned by such person . . .; provided that any such property transported to any such farm is for use in the operation of such farm." Mo. Rev. Stat. § 301.010(27). The license plate on Calzone's truck is marked with the letter "F," designating it as a vehicle used for farm or farming transportation operations. *See id*. § 301.030(3).

A Missouri state trooper stopped Calzone in June 2013 to inspect his dump truck under a Missouri statute that authorizes random roadside inspections of commercial motor vehicles. *See id*. § 304.230. Calzone objected to the stop and refused to allow the inspection. He later filed this action under 42 U.S.C. § 1983, seeking, among other things, to enjoin the superintendent of the highway patrol from authorizing and directing patrol officers to stop and inspect his dump truck without individualized suspicion that he failed to comply with state law. After an earlier decision of this court, *Calzone v. Hawley*, 866 F.3d 866 (8th Cir. 2017), and a remand

---

[2]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

for further proceedings, the only claim remaining on this appeal is one for declaratory and injunctive relief against the superintendent.

The Fourth and Fourteenth Amendments forbid the State to conduct unreasonable searches and seizures. The traditional standard of reasonableness in the context of a criminal investigation requires a warrant and probable cause to believe that a search will discover evidence of unlawful activity. *See Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53 (1995). But in the case of commercial property that is involved in a "closely regulated" industry whose operation "poses a clear and significant risk to the public welfare," *City of Los Angeles v. Patel*, 135 S. Ct. 2443, 2454 (2015), the property owner has a reduced expectation of privacy, and a warrantless seizure and inspection may be reasonable without an individualized showing of probable cause. *New York v. Burger*, 482 U.S. 691, 699-700 (1987).

To invoke this authority based on a state scheme governing a closely regulated industry, the State must satisfy three criteria: (1) the regulatory scheme advances a substantial government interest; (2) warrantless inspections are necessary to further the regulatory scheme; and (3) the rules governing the inspections are a constitutionally adequate substitute for a warrant, *i.e.*, the rules must provide notice that the property may be searched for a specific purpose and must limit the discretion of the inspecting officers. *Calzone*, 866 F.3d at 871. Missouri law authorizes the state patrol to conduct "random roadside examinations or inspections" of commercial motor vehicles. Mo. Rev. Stat. § 304.230.1. We have held that commercial trucking is a "closely regulated" industry, *United States v. Ruiz*, 569 F.3d 355, 356-57 (8th Cir. 2009); *United States v. Mendoza-Gonzalez*, 363 F.3d 788, 794 (8th Cir. 2004), and that Missouri's regulatory scheme for the inspection of commercial vehicles is constitutional on its face:

> Missouri has a substantial interest in ensuring the safety of the motorists
> on its highways and in minimizing damage to the highways from

overweight vehicles. *Ruiz*, 569 F.3d at 357 (citing cases); *State v. Rodriguez*, 877 S.W.2d 106, 109 (Mo. 1994). Given the transitory nature of commercial trucks, *United States v. Fort*, 248 F.3d 475, 481 (5th Cir. 2001), and the difficulty of detecting violations of the regulatory scheme by routine observation, effective enforcement would be nearly impossible without impromptu, warrantless searches. *United States v. Maldonado*, 356 F.3d 130, 136 (1st Cir. 2004). The challenged subsections are also a permissible substitute for a warrant. They provide notice to commercial truck drivers of the possibility of roadside inspection by a designated law enforcement officer, and they limit the scope of the officer's inspections to an examination solely for regulatory compliance. *See Ruiz*, 569 F.3d at 357.

*Calzone*, 866 F.3d at 871.

The Missouri regime regulates commercial motor vehicles operating on state highways. Any "motor vehicle designed or regularly used for carrying freight and merchandise" must be registered as a commercial motor vehicle, and the owner must pay an annual fee based on the vehicle's weight. Mo. Rev. Stat. §§ 301.010(9); *see id.* § 301.030.3, 301.058.1. A commercial motor vehicle may not be operated on certain streets, *see id.* § 300.550, is subject to height, weight, and length restrictions, *see id.* §§ 304.170-304.230, and must undergo biennial safety inspections. *See id.* § 307.350.1. Missouri also has incorporated a subset of the Federal Motor Carrier Safety Regulations into its statutory scheme for any vehicle that is defined as a "commercial motor vehicle" under federal law. *See id.* § 307.400.1. The applicable regulations govern licensing, safety, required parts and accessories, and transportation of hazardous materials. *See* 49 C.F.R. §§ 391-397. Missouri patrol officers have authority to conduct random roadside examinations or inspections to determine compliance with the governing rules. *See* Mo. Rev. Stat. § 304.230.1, .2, .7.

Calzone asserts that he is exempt from the lion's share of these regulations, so he is not part of the "closely regulated" industry, and the Missouri inspection scheme

is therefore unconstitutional as applied to him. He contends that his truck is exempt from all of the federal regulations, because he operates his truck only within Missouri, while the federal definition of "commercial motor vehicle" is a vehicle over 10,000 pounds that is "used on a highway *in interstate commerce*." 49 C.F.R. § 390.5 (emphasis added). The Missouri statute, however, makes it unlawful to operate any "commercial motor vehicle," unless the vehicle complies with the federal regulations, "whether *intrastate transportation or* interstate transportation." Mo. Rev. Stat. § 307.400.1 (emphasis added). The state statute thus expands the federal definition of "commercial motor vehicle" to encompass vehicles that are engaged only in "intrastate transportation" and thus only in intrastate commerce. Calzone's proposed interpretation cannot be squared with the structure of the state statute. Section 307.400.5 creates an exception to application of the federal regulations for certain commercial motor vehicles that are "operated in intrastate commerce to transport property" and weigh 26,000 pounds or less. If Calzone were correct that § 307.400.1 already excepted *all* vehicles that are operated in intrastate commerce, then the narrower exception of § 307.400.5 would be unnecessary.

Calzone also argues that he is exempt from complying with the federal regulations because he is not a "motor carrier" within the meaning of the regulations. Citing a definition from an inapplicable federal statute, he contends that the meaning of "motor carrier" is limited to persons who provide transportation for compensation, *see* 49 U.S.C. § 13102(14), and does not extend to one who transports his own commercial property. But the definition of "motor carrier," for purposes of the federal safety regulations that are incorporated by the Missouri statute, is "a for-hire motor carrier *or* a private motor carrier." 49 C.F.R. § 390.5 (emphasis added); *see* 49 U.S.C. §§ 13102(15), 31502(b). A "private motor carrier" includes a person like Calzone who provides transportation of property by commercial motor vehicle and is not a for-hire motor carrier. *Id.*

It is true that Calzone is not subject to the *full* panoply of regulations that govern commercial motor vehicles in Missouri. Because Calzone normally uses his dump truck in association with his ranch and has license plates marked with a farm vehicle designation, he is exempt from some of the rules that apply to operators of other commercial motor vehicles. He is not required to acquire a commercial driver's license to operate his truck unless he uses it to transport hazardous materials. *See* Mo. Rev. Stat. §§ 302.700.2(23), 302.700.2(29), 302.775(1). He is a "private carrier" under Missouri law, so he is not subject to the state regulations that govern operators who are "motor carriers" under Missouri law. *See id.* §§ 390.020(23), 390.030.3. And his truck qualifies as a "covered farm vehicle" under the federal regulations, which exempts him from Missouri's application of some of the federal standards: he is exempt from all driver qualification regulations, *see* 49 C.F.R. §§ 391.2(c)-(d), and he is excepted from regulations governing hours for drivers, *see id.* § 395.1(s), and those imposing a duty on motor carriers to inspect, repair, and maintain commercial motor vehicles within their control. *See id.* § 396.1(c).

But unlike the vehicles at issue in *United States v. Herrera*, 444 F.3d 1238, 1245 (10th Cir. 2006), and *United States v. Seslar*, 996 F.2d 1058, 1063 (10th Cir. 1993), Calzone's truck is subject to regulation under the applicable state regulatory scheme. That Missouri tailors its system to fit different types of commercial motor vehicles does not mean that Calzone is outside of the "closely regulated" industry of commercial trucking. He operates a 54,000-pound dump truck on Missouri highways in support of a commercial enterprise—his horse and cattle ranch. Although Calzone does not operate his commercial vehicle for hire, he is still subject to a broad range of regulations that include height, weight, and length restrictions, licensing standards, state-conducted inspection requirements, and safety standards. *See* Mo. Rev. Stat. §§ 300.550, 301.030.3, 301.058.1, 304.170-.230, 307.400; 49 C.F.R. §§ 390, 392-93.

By choosing to operate a heavy truck in furtherance of a commercial venture, Calzone subjects himself to a pervasive regulatory scheme and has a reduced

expectation of privacy. Missouri maintains a "substantial interest in ensuring the safety of the motorists on its highways and in minimizing damage to the highways from overweight vehicles," *Calzone*, 866 F.3d at 871, and that interest does not dissipate simply because Calzone's commercial activity is on behalf of his own ranch rather than for hire. We therefore conclude that Missouri's regulatory scheme advances a substantial government interest as applied to Calzone, and that warrantless inspections are necessary to further the regulatory scheme.

Calzone argues that even if he is a member of the closely regulated commercial trucking industry, the statute authorizing random inspections is an impermissible substitute for a warrant. He complains that § 304.230 does not properly define the scope of the authorized searches, adequately notify citizens that they could be subject to warrantless stops, or appropriately limit the discretion of the investigating officer. But we rejected these same arguments in considering Calzone's facial challenge, and nothing about the nature of his as-applied challenge changes the answer. The disputed subsections of the Missouri statutes are a permissible substitute for a warrant, because "[t]hey provide notice to commercial truck drivers of the possibility of roadside inspection by a designated law enforcement officer, and they limit the scope of the officer's inspections to an examination solely for regulatory compliance." *Id.*

The judgment of the district court is affirmed.

_____