# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1635

_____

James Clayton Solomon

*Plaintiff - Appellee*

v.

Hunter Petray, Captain, Benton County Detention Center; Sheriff Keith Ferguson; Sgt. Tomlin; Sgt. Robbins; Sgt. Torrez; Deputy Johnson; Deputy Johnston; Deputy Morrison; Deputy Roland; Deputy Rankin; Deputy Wales; Deputy Elkington; Deputy Lockhhart; Deputy Engleman; Deputy Wright; Deputy Fry; Deputy Reyes; Deputy Holly; Deputy Carlton; Deputy Lowther; Deputy Duncan; Deputy Hernandez; Deputy Bryson; Major Gene Drake; Lt. Carter; Sgt. Vaughn

*Defendant*s

Deputy U.S. Marshal Cory Thomas; Deputy U.S. Marshal Susan Jones

*Defendants - Appellants*

John Does, Unknown U.S. Marshals; Benton County Deputy Stickland

*Defendant*s

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: April 13, 2015
Filed: July 29, 2015

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

United States Marshals Susan Jones and Cory Thomas appeal the district court's[1] denial of summary judgment to dismiss James Solomon's *Bivens*[2] civil-rights lawsuit against them. The district court held that, according to the facts as pleaded by Solomon, Jones and Thomas were not entitled to qualified immunity against Solomon's excessive force claim. We affirm.

## I. *Background*

In January 2008, Solomon was convicted of violating the terms of his supervised release in the Western District of Arkansas. The court sentenced him to five years' imprisonment and allowed him to voluntarily surrender himself to the custody of the United States Marshals on or before April 2, 2008. In February 2008, Solomon instead absconded. Before doing so, Solomon wrote a letter in which he stated his hope that the Honorable Jimm Larry Hendren, then Chief Judge of the Western District of Arkansas, "dies of a slow and painful disease." He sent the letter to Judge Hendren's chambers and a local newspaper, which subsequently published the letter. Solomon was later apprehended in Los Angeles on April 10, 2008, and was charged with failing to surrender himself by April 2.

_____

[1]The Honorable J. Leon Holmes, United States District Judge for the Eastern District of Arkansas, sitting by assignment in the United States District Court for the Western District of Arkansas.

[2]*Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

Marshals transported Solomon to the Oklahoma City Federal Transfer Center in Oklahoma City, Oklahoma. On April 25, 2008, Solomon was then driven from Oklahoma City to Fort Smith, Arkansas, by Marshal Susan Jones, who was accompanied by a contract guard. According to Solomon's addendum to his pro se complaint, "[w]hen [he] was transported from Oklahoma [City] Federal Transfer Center by Marshals they showed [him] their copy of the letter and said [he]'d 'pay for writing that type of letter to the judge.'"

After arriving in Fort Smith, Solomon was then transferred to the Benton County Criminal Detention Center (BCCDC). According to Solomon's addendum, while marshals were driving him to the BCCDC, Solomon recognized the route they were taking was not to a local detention center as he had anticipated. When Solomon asked the marshals where they were going, they responded that he was being transported to the BCCDC. They said that going to the BCCDC "was like going to hell [because] they were known for their abusive handling practices." According to Solomon, the marshals also told him that he would get "'special treatment' at BCCDC 'cause they'd make sure of it." During this trip, the marshals also allegedly told Solomon that he "should never have written that letter to the judge and they were going to make sure [he] was punished for that letter." In a later motion, Solomon alleged that "[o]n or about [the] time" that Marshals told him he was being transported to the BCCDC, Marshal "Cory Thomas struck [Solomon] with a blow to the lower body, causing [his] knees to buckle. [Solomon] stated that he received medical treatment for his injuries."

After a few days at the BCCDC, Solomon alleged in his complaint that he "was handcuffed in the middle of the night . . . and a dark cloth was slipped over [his] head and he was . . . carried out of his cell . . . into a hallway and then into another room and given a 'blanket-party' by the deputies." Solomon believed that a blanket party refered to a beating in which the assailants wrap the victim in a blanket so that the victim cannot see or identify the assailants. Solomon further alleged that "[t]he

-3-

deputies told [him], 'that one's for the marshals' or something to that effect to let [him] know the U.S. Marshal Service asked them to give [him] the 'blanket party.'"

Solomon brought this *Bivens* action pro se against Jones and Thomas, among others.[3] Solomon alleged Jones and Thomas "violated [his] civil rights . . . guarantee[ing] due process and to be free of excessive force"; Solomon did not offer further specifics. Solomon's complaint also alleged that the Marshals Service sent Solomon to the BCCDC to retaliate against Solomon for the letter he wrote to Judge Hendren.

Jones and Thomas filed separate motions to dismiss, or in the alternative, motions for summary judgment. Jones and Thomas both argued that Solomon's complaint failed to state a claim against them because they were not responsible for transporting Solomon from Fort Smith to the BCCDC. They both submitted a declaration from Mark Spellman, the Supervisory Deputy United States Marshal of the Western District of Arkansas ("Spellman Declaration"). In his declaration, Spellman indicated that neither Jones nor Thomas were responsible for deciding where Solomon would be housed. Further, the Spellman Declaration averred that BCCDC deputies transported Solomon from Fort Smith to the BCCDC. Of the two marshals, only Jones had actually transported Solomon, and she transported Solomon from Oklahoma City to Fort Smith. Therefore, Jones and Thomas moved for dismissal because they could not have made the threats alleged by Solomon during his transport from Fort Smith to the BCCDC or otherwise arranged for the blanket party at the BCCDC. Additionally, both Jones and Thomas moved for dismissal based on qualified immunity.

---

[3]Solomon also brought actions against several deputies of the BCCDC and other state officials under 42 U.S.C. § 1983. *See Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (per curiam) ("An action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." (quotation and citation omitted)).

The district court, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, treated the motions as those for summary judgment because he considered "matters outside the pleadings" by considering the Spellman Declaration. *See* Fed. R. Civ. P. 12(d). The court construed the facts in the light most favorable to Solomon but also made factual findings consistent with the undisputed Spellman Declaration that Jones and Thomas were not responsible for assigning Solomon to the BCCDC and that neither were present during Solomon's transportation from Fort Smith to the BCCDC. The court denied summary judgment stating "Solomon correctly notes that his complaint against [Jones and Thomas] does not depend upon a finding that they transported him from the federal building in Fort Smith to the [BCCDC]."

Jones and Thomas appealed the decision to this court. *Solomon v. Petray*, 699 F.3d 1034, 1038 (8th Cir. 2012). Thomas did not challenge the district court's declination to dismiss Solomon's excessive-force claim. In his appellate briefing, Thomas applied *Anthony v. Runyon*, 76 F.3d 210, 214 (8th Cir. 1996), and concluded that "Solomon has raised a[n excessive-force] claim which on its face is not subject to dismissal at this time." We ultimately remanded the case back to the district court "for a more detailed consideration of the claims of qualified immunity." *Solomon*, 699 F.3d at 1038. We found that there was a "complete absence in the order of any explicit reference to, or analysis of, Jones's and Thomas's claims of qualified immunity which leaves us unable to determine whether the district court even considered the issue of qualified immunity before denying the motions for summary judgment." *Id.* at 1039.

On remand, the district court first discussed the Spellman Declaration. "Because the record conclusively demonstrates that Thomas and Jones did not decide that Solomon would be detained in the [BCCDC] and did not transport him there," the district court granted summary judgment on Solomon's claims that Thomas and Jones assigned Solomon to the BCCDC in retaliation for his letter to Judge Hendren. Additionally, the court found that Thomas and Jones could not have leveled any of

-5-

the alleged threats against Solomon while being transported to the BCCDC because the record indicated that they were not involved in this leg of Solomon's transportation.

After granting summary judgment on these claims, the court next took the "opportunity to clarify" Solomon's remaining cognizable claims in the pro se complaint and addendum. The court found that

> Solomon is in essence claiming that Jones and Thomas retaliated against Solomon for writing the letter regarding Judge Hendren by asking Benton County officers to beat and abuse Solomon and that Thomas physically abused him. Construing Solomon's *pro se* complaint liberally, these allegations can be viewed as distinct claims: (1) claims against Jones and Thomas that they retaliated against Solomon for writing the letter; (2) a claim against Jones that she conspired to commit excessive force on Solomon; and (3) a claim that Thomas committed excessive force on Solomon.

The court again analyzed the motions as those for summary judgment and found that Jones and Solomon were not entitled to qualified immunity for any of Solomon's remaining claims. As to the first claim of retaliation, the court found that Solomon's letter was protected speech or expression. Thus, Jones and Thomas were not entitled to qualified immunity because the facts as pleaded showed that they deprived Solomon of his right to be free from retaliation for engaging in this constitutional right. The court found that Solomon had pleaded sufficient facts to link Jones with the alleged blanket party. Solomon alleged that during his transport from Oklahoma City to Fort Smith, with Jones present as confirmed by the Spellman Declaration, the marshals showed Solomon a copy of his letter and said that he would pay for writing it. Later, he suffered the adverse action of a blanket party. Solomon alleged that BCCDC deputies attributed the abuse to a request from the marshals. The district court found that these alleged facts, when taken in the light most favorable to

Solomon, were sufficient to show that Jones was not entitled to qualified immunity. In regard to Thomas, the court accepted the facts alleged by Solomon that Thomas struck Solomon for writing the letter. Thus, the court concluded that Thomas was not entitled to qualified immunity on Solomon's retaliation claim because he also deprived Solomon of his constitutional right to be free from retaliation for exercising his First Amendment right of freedom of expression.

As to the second claim against Jones for conspiracy to commit excessive force, the court also found that Jones was not entitled to qualified immunity. The court found that Jones's alleged threat during Solomon's transportation from Oklahoma City to Fort Smith and the BCCDC deputies' alleged statements during the blanket party could lead reasonable jurors to believe there was an implied agreement between Jones and the BCCDC deputies to deprive Solomon of his constitutional right to be free from excessive force. Thus, the district court determined that Jones was not entitled to qualified immunity on Solomon's conspiracy-to-commit-excessive-force claim because the alleged facts were sufficient to show she deprived Solomon of an established constitutional right.

As to the third claim against Thomas for use of excessive force, the court found that it need not analyze whether to grant summary judgment on the basis of qualified immunity because Thomas conceded in his briefing to this court that the excessive-force claim was "not subject to dismissal at this time." The district court determined that Thomas's concession that the excessive-force claim was not subject to dismissal relieved the court from having to consider the issue of dismissal on the basis of qualified immunity.

## II. *Discussion*

Jones and Thomas appeal the district court's denial of qualified immunity. They argue that they are entitled to qualified immunity based on the Spellman Declaration and the insufficient facts pleaded in Solomon's complaint and addendum.

Additionally, they seek remand to the district court for clarification on its findings regarding Solomon's excessive-force claim against Thomas and to allow for limited discovery.

## A. *Jurisdiction*

As a preliminary matter, we must determine whether this court has jurisdiction to hear this interlocutory appeal. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." (citation omitted)). An order denying qualified immunity is immediately appealable if it turns on a question of law, meaning the application of qualified immunity principles. *Aaron v. Shelley*, 624 F.3d 882, 883–84 (8th Cir. 2010). Thus, we have jurisdiction to review the merits of an appeal when a defendant "principally challenges the district court's application of qualified immunity principles to the established summary judgment facts." *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012). Accordingly, we will examine Jones's and Thomas's arguments on appeal and discern if they raise issues of law or issues of disputed facts.

In this appeal, Jones and Thomas argue that the district court should have granted qualified immunity because the facts, as pleaded by Solomon, do not show a violation of clearly established rights. Jones and Thomas state that "[f]or the purpose of this appeal, there are no disputed facts . . . to determine." The issue then is "whether [the facts pleaded by Solomon] (undisputed for the purpose of this appeal) and any reasonable inferences therefrom . . . show[] a violation of 'clearly established' law." Specifically, Thomas first argues that the district court erred in denying him qualified immunity as to Solomon's retaliation claim because there are no facts showing that Thomas's alleged blow was causally related to Solomon's exercise of his free expression rights. Similarly, Jones argues that the district court erred in denying her qualified immunity as to Solomon's retaliation claim against her because the facts as pleaded by Solomon fail to provide any causal relation between her alleged threats and the blanket party at the BCCDC. Finally, for the same reason,

Jones also argues that the district court erred by denying her qualified immunity as to Solomon's conspiracy claim.

The question of "whether the uncontested evidence demonstrates that [the defendants] violated a clearly established constitutional right" is "a legal issue falling squarely within our limited interlocutory appellate jurisdiction." *Brown v. Fortner*, 518 F.3d 552, 557 (8th Cir. 2008). "To be sure, the resolution of th[is] legal issue[] will entail consideration of the factual allegations that make up the plaintiff's claim for relief . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). Whether a constitutional violation occurred is a question of law based on underlying facts; here, we find that Jones and Thomas challenge whether the underlying facts, when properly construed, amount to violations of Solomon's constitutional rights.[4] This is within the limited scope of our interlocutory review of a district court's denial of qualified immunity.

B. *Qualified Immunity*

---

[4]We reject Solomon's argument that Jones's and Thomas's argument should not be considered on appeal because it was not first raised before the district court. *McBurney v. Stew Hansen's Dodge City, Inc.*, 398 F.3d 998, 1002 (8th Cir. 2005) ("Absent exceptional circumstances we will not consider arguments raised for the first time on appeal." (citation omitted)). Our review of the record reveals that Jones and Thomas questioned whether the facts pleaded in Solomon's complaint and addendum were enough to support constitutional violations. Each of Jones's and Thomas's motions to dismiss, or in the alternative, for summary judgment contained sections entitled "*Qualified Immunity*," which argued in part that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before commencement of discovery." (Citing *Mitchell*, 472 U.S. at 526.) This adequately preserved their current arguments for appeal.

We review de novo the district court's denial of summary judgment on qualified immunity grounds.[5] *See Brown*, 518 F.3d at 558 (citation omitted). To determine if Jones and Thomas are "entitled to qualified immunity, we must conduct a two-step inquiry: (1) [whether] the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) [whether] the right was clearly established at the time of the deprivation." *Jones*, 675 F.3d at 1161 (alterations in original) (quotation and citation omitted). In making this determination, we must also "afford [Solomon] all reasonable inferences to be drawn from [the] record." *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004) (citation omitted). Jones and Thomas only challenge the first step by arguing that the facts as pleaded by Solomon are insufficient to show that his constitutional rights were violated.

We have instructed that district courts "'must take a careful look at the record, determine which facts are genuinely disputed, and then view those facts in a light most favorable to the non-moving party as long as those facts are not so blatantly contradicted by the record . . . that no reasonable jury could believe [them].'" *Jones*, 675 F.3d at 1161–62 (alterations in original) (quotation marks omitted) (quoting *O'Neil v. City of Iowa City, Iowa*, 496 F.3d 915, 917 (8th Cir. 2007)). On appeal, "we [then] look at 'whether the official is entitled to qualified immunity based on the summary judgment facts as described by the district court.'" *Id.* at 1162 (quoting *Nelson v. Shuffman*, 603 F.3d 439, 446 (8th Cir. 2010)).

---

[5]As a preliminary matter, Jones and Thomas challenge the district court's treatment of their motions to dismiss as motions for summary judgment. "This court reviews a district court's decision to convert a Rule 12(b)(6) motion to dismiss into a motion for summary judgment for abuse of discretion." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (citation omitted). We find no abuse of discretion in the court's conversion given its consideration of the Spellman Declaration, which amounts to the consideration of evidence outside of the pleadings. *See* Fed. R. Civ. P. 12(d).

-10-

Jones and Thomas emphasize the Spellman Declaration throughout their brief. They assert that it proves that Jones and Thomas had no role in deciding where Solomon was housed and did not transport Solomon from Fort Smith to the BCCDC. Given the uncontested testimony contained in the Spellman Declaration, the court correctly granted Jones and Thomas summary judgment on Solomon's claims alleging that they sent him to the BCCDC in retaliation for writing the letter to Judge Hendren. The court also correctly granted Thomas and Jones qualified immunity from any liability that could be associated with the alleged threats made to Solomon while being transported from Fort Smith to the BCCDC. As the district court recognized, however, the Spellman Declaration does not end the matter. Solomon's claims are not solely premised on threats made during his transportation to the BCCDC. Quite the contrary, the district court determined that the facts as pleaded by Solomon still alleged several cognizable claims against Thomas and Jones for an alleged physical blow, threats made during his transportation from Oklahoma City to Fort Smith, and the so-called blanket party at the BCCDC.

## 1. *Retaliation Claims*

"To prevail on a retaliation claim, [Solomon] must show 1) he engaged in a protected expression, 2) he suffered an adverse action, and 3) the adverse action was causally related to the protected expression." *Nelson*, 603 F.3d at 450 (citation omitted). Jones and Thomas focus on the third element, arguing that Solomon has not pleaded facts that would allow a reasonable jury to find a causal connection between Solomon's protected expression and the adverse actions he suffered.

### a. *Thomas*

Thomas first argues that the district court erred in its construction of Solomon's claim. Specifically, Thomas contends that his alleged blow to Solomon "is a claim of 'excessive force' only, not retaliation." Pursuant to the Prison Litigation Reform Act, district courts are charged to review prisoner complaints and to "identify cognizable claims or dismiss the complaint." 28 U.S.C. § 1915A(b). As a pro se petitioner,

-11-

Solomon's complaint and addendum are to be given liberal construction. "When we say that a pro se complaint should be given liberal construction, we mean that if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Solomon's factual allegations against Thomas assert the following:

> Defendants told [Solomon] that he was going to "hell" in retaliation for a letter he wrote to Judge Hendren. Defendants also said that he would "pay for writing that type of letter to the judge." On or about this time, Defendant Cory Thomas struck [Solomon] with a blow to the lower body . . . .

Thomas would have us reverse the district court's determination that these facts allege a retaliation claim. Under a liberal construction, we find these facts are enough to state a cognizable retaliation claim. Solomon pleaded that Thomas struck him while or shortly after unnamed defendants leveled threats against Solomon "in retaliation" for his protected expression. We hold that the district court did not err by liberally construing Solomon's facts to allege that Thomas's blow was a retaliation for Solomon's alleged expression about Judge Hendren.

Thomas also argues that even if Solomon has pleaded a retaliation claim that Solomon has not pleaded specific facts to fulfill the third element of such a claim: that the adverse action of Thomas's blow was causally related to Solomon's protected expression. We disagree. Applying the appropriate review standard, we find that the facts as pleaded do allege that Thomas's adverse action was in retaliation to Solomon's protected expression. While Solomon's pro se complaint and addendum did not expressly connect the dots, these documents clearly allege that Thomas's blow occurred during an episode in which others were threatening Solomon for his protected expression.

-12-

Thomas argues that such a holding requires this court to "supply additional facts" or "construct a legal theory for [Solomon] that assumes facts that have not been pleaded." *Stone*, 364 F.3d at 914 (quotation and citation omitted). We disagree. As with all motions for summary judgment, we simply construe the facts in the light most favorable to the non-moving party and afford him all reasonable inferences supported by the record. *See Jones*, 675 F.3d at 1161–62.

Thomas's argument for qualified immunity fails because the facts and reasonable inferences allege that Thomas violated Solomon's constitutional right to be free from retaliation for exercising his right to expression. *See Nelson*, 603 F.3d at 450. This right is clearly established as "[i]t is well-settled that 'as a general matter[,] the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . on the basis of his constitutionally protected speech.'" *Osborne v. Grussing*, 477 F.3d 1002, 1005 (8th Cir. 2007) (third alteration in original) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

### b. *Jones*

Next, Jones similarly argues that she is entitled to qualified immunity as to Solomon's retaliation claim. She avers that Solomon failed to allege facts that show that the allegedly planned blanket party was causally related to Jones's threat that Solomon would pay for writing the letter to Judge Hendren. She claims that the district court resorted to speculation that Jones was in any way responsible for the blanket party perpetrated by the BCCDC deputies.

"As with any summary judgment motion, while we are required to make all reasonable inferences in favor of the non-moving party, we do not resort to speculation." *Brown*, 518 F.3d at 558 (citing *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006)); *see also ACT, Inc. v. Sylvan Learning Sys., Inc.*, 296 F.3d 657, 666 (8th Cir. 2002) (stating that non-moving parties are not entitled "to the benefit of unreasonable inferences, those that amount to nothing more than mere

conjecture" (citation omitted)). Thus, Jones argues that the district court relied upon mere speculation and conjecture guised as reasonable inferences to bridge the gap between her alleged threats and the alleged blanket party.

We disagree. The facts as pleaded by Solomon, while thin, enable a jury to draw a reasonable inference that Jones used the alleged blanket party to retaliate against Solomon for his protected expression. Solomon pleaded that during his transportation from Oklahoma City to Fort Smith, a marshal showed him a copy of the letter he wrote to Judge Hendren and told him he was going to pay for writing the letter. As the Spellman Declaration indicates, Jones was one of two people assigned to this transportation duty; of the two, she was the only marshal. Solomon further alleged that deputies from the BCCDC gave him a blanket party during which a deputy stated "that one's for the marshals' or something to that effect to let [Solomon] know the U.S. Marshal Service asked them to give [him] the 'blanket party.'" The district court found that the record could support a reasonable inference that the one named marshal alleged to have threatened Solomon for his protected expression was plausibly involved in making good on her threat.

Jones contends that this court should nonetheless reject this reasonable inference of misconduct because there are equally plausible inferences that "more likely [are] explained by[] lawful . . . behavior." *Iqbal*, 556 U.S. at 680 (citation omitted). Jones argues that her alleged threat that Solomon would pay for writing his letter to Judge Hendren is more likely explained as an acknowledgment that Solomon would be punished for absconding. Additionally, Jones contends that her threat can be more likely explained by her knowledge of the Sentencing Guidelines; thus, Solomon would "pay" because the letter would likely prevent him from taking advantage of a 2-level decrease in his total offense level pursuant to Guidelines § 3E1.1 for accepting responsibility for absconding. Jones's inferences are indeed plausible but not necessarily more likely and hence more suited for a jury to evaluate than this court.

-14-

Therefore, Jones's argument for qualified immunity fails because the facts as pleaded by Solomon and the reasonable inferences afforded in his favor allege that Jones violated Solomon's constitutional right to be free from retaliation for exercising his right to expression.[6]

## 2. *Conspiracy Claim Against Jones*

To prevail on his claim that Jones conspired to deprive him of his constitutional rights, Solomon must show "[(1)] that the defendant conspired with others to deprive him . . . of a constitutional right; [(2)] that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and [(3)] that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (citation omitted) (discussing a claim brought against state actors under 42 U.S.C. § 1983).[7]

---

[6]In passing, Jones and Thomas argue that they are entitled to summary judgment on Solomon's *Bivens* claim for retaliation because Solomon fails to plead factual allegations of personal participation in the alleged constitutional violations. *See Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (finding that a prison's warden and associate warden were not liable for his supervision of prison employees who allegedly deprived the plaintiff of his constitutional rights). We reject this argument because the facts pleaded by Solomon are sufficient to establish personal participation of both Jones and Thomas in the deprivation of Solomon's constitutional rights. Jones allegedly threatened Solomon, and Solomon later suffered a beating at the hands of BCCDC deputies who indicated that unnamed marshals requested the beating. Thomas personally struck Solomon while Solomon was being threatened by unnamed marshals for writing the letter to Judge Hendren. These facts are sufficient to plead that Jones and Thomas personally participated in the deprivation of Solomon's rights.

[7]As a general rule, *Bivens* claims and § 1983 claims are almost identical and involve the same analysis. *See Gordon*, 168 F.3d at 1113 ("An action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." (citation

Here, the district court found that Solomon pleaded sufficient facts that adequately alleged that Jones conspired with BCCDC deputies to deprive Solomon of his constitutional right to be free from excessive force. Jones challenges this finding because she argues that Solomon has failed to plead facts that establish the first element: that she conspired with BCCDC deputies.

For largely the same reasons stated above regarding Solomon's retaliation claim against Jones, we disagree with Jones's argument. It is true that Solomon's complaint and addendum did not explicitly state that Jones entered into an agreement with BCCDC deputies, as might normally be required to plead a conspiracy claim. *See Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) ("A conspiracy claim . . . requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." (citations omitted)). The question of whether a conspiracy exists "'to deprive the plaintiffs of their constitutional rights[, however,] should not be taken from the jury if there is a possibility the jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims.'" *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) (quoting *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996)). Further,

> Because "the elements of a conspiracy are rarely established through means other than circumstantial evidence, and summary judgment is only warranted when the evidence is so one-sided as to leave no room for any reasonable difference of opinion as to how the case should be decided . . . [t]he court must be convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy."

*Id.* (quoting *Westborough Mall, Inc. v. City of Cape Girardeau*, 693 F.2d 733, 743 (8th Cir. 1982)). We agree with the district court that a liberal construction of

---

omitted)); *Duffy v. Wolle*, 123 F.3d 1026, 1037 (8th Cir. 1997) (recognizing that the § 1983 body of law applies to *Bivens* actions).

Solomon's pro se complaint would allow a reasonable jury to find that Jones entered an implicit agreement with BCCDC deputies to give Solomon a blanket party. Solomon pleaded that while he was being transported from Oklahoma City to Fort Smith, marshals showed him a copy of the letter Solomon wrote to Judge Hendren and told him that he would pay for writing the letter. The Spellman Declaration established that Jones was the only marshal who was involved in this leg of Solomon's transportation. Solomon further alleges that he was given a blanket party by BCCDC deputies who specifically mentioned that they were doing so at the request of the marshals. While these facts, taken together, are thin, they are nonetheless sufficient for a pro se litigant to survive summary judgment on qualified immunity grounds. If such facts were presented to a jury, they could reasonably infer that the one marshal who threatened that Solomon would suffer repercussions for writing the letter to Judge Hendren agreed with BCCDC deputies to bring about those repercussions.

Jones relies on *Gometz v. Culwell*, 850 F.2d 461 (8th Cir. 1988), to support her argument that the facts as pleaded are not sufficient to plead a constitutional violation. In *Gometz*, we reversed a denial of summary judgment because the record did not contain any facts showing that a public official entered an agreement with coconspirators to deprive the habeas petitioner of his constitutional rights. *Id.* at 463–64. Randy Gometz alleged that Deputy United States Marshal Wilson Culwell conspired with prison officials to beat the petitioner "to prevent and then punish him for testifying" as a defense witness for fellow federal inmates. *Id.* at 462. Gometz alleged that Culwell tried to intimidate him in a holding cell by physically assaulting him and making verbal threats that he would "make sure he gets his." *Id.* Upon returning to the prison after giving his testimony, Gometz alleged he was attacked by prison guards. *Id.* Thus, Gometz tied Culwell's verbal threats with the attack to allege a conspiracy. *Id.* at 463. We found that "[t]his evidence, evaluated in conjunction with all reasonable inferences which can be drawn from other facts presented, demonstrates the lack of a genuine issue of material fact." *Id. Gometz*, however, is

distinguishable. First, "even after *extensive discovery*, Gometz . . . produced insufficient evidence of any agreement between Deputy Culwell and [prison guards] to retaliate against Gometz." *Id.* at 464 (emphasis added). At this stage of the proceedings in the instant case, Solomon has not benefitted from discovery to uncover specific facts proving Jones entered into a conspiracy with BCCDC deputies. Second, "the statement allegedly made by Deputy Culwell and the altercation at [the prison]—is simply not sufficient for a reasonable jury to return a verdict for Gometz." *Id.* Solomon's facts, on the other hand, allege both a threat from Jones and a confirmation from BCCDC deputies that they were beating Solomon on behalf of the marshals. This alleged admission by the BCCDC deputies is more than the petitioner could present in *Gometz*; it serves as the crucial connecting link that would support a jury's reasonable inference that Jones entered into an agreement with BCCDC deputies to deprive Solomon of his constitutional right to be free from excessive force. Third, *Gometz* did not involve a pro se litigant. Thus, we agree with the district court that Jones is not entitled to qualified immunity on Solomon's conspiracy claim against her.

## C. *Excessive-Force Claim Against Thomas*

Finally, Thomas asks this court to remand Solomon's excessive-force claim back to the district court so it can clarify its findings and permit limited discovery so Thomas can later assert qualified immunity on this claim. The interlocutory nature of this appeal means the case is ongoing in the district court. Whatever clarification Thomas seeks before the district court regarding the excessive-force claim can and should be determined in further proceedings. Further, we decline to order the district court to allow limited discovery for Thomas. Limited discovery is sometimes appropriate "to resolve the qualified immunity question." *Technical Ordnance, Inc. v. United States*, 244 F.3d 641, 647 (citing *Anderson v. Creighton*, 483 U.S. 635, 646–47 (1987)). We are not a court of first instance, and will not consider arguments—or in this case, a form of relief—if it was not presented for consideration to the district court. *See Norwest Bank of N.D., N.A. v. Doth*, 159 F.3d 328, 334 (8th

Cir. 1998) ("As a general rule, we will not consider issues not presented to [the lower court] in the first instance." (alteration in original) (citing *First Bank Investors' Trust v. Tarkio Coll.*, 129 F.3d 471, 477 (8th Cir. 1997))). Because Thomas has yet to request limited discovery from the district court, Thomas's request for limited discovery is best made before the district court in further proceedings below. *See, e.g.*, *Keil v. Triveline*, 720 F. Supp. 2d 1088, 1089–90 (W.D. Mo. 2010) (granting request for limited discovery on qualified immunity issue); *In re Scott ex rel. Simmons*, No. 4:10CV1578 TCM, 2011 WL 1791824, at *5 (E.D. Mo. May 10, 2011) (unpublished) (same).

## III. *Conclusion*

For the foregoing reasons, we affirm the district court's denial of summary judgment on qualified immunity grounds as to Solomon's retaliation and conspiracy claims.

_____