# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-1552

_____

Trenisha Webster

*Plaintiff - Appellee*

v.

Jennifer Westlake, Individually and in capacity of a law enforcement officer; Lori Kelly, Individually and in capacity of a law enforcement officer; City of Des Moines, Iowa

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Central

_____

Submitted: March 16, 2022
Filed: July 27, 2022

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Des Moines detectives arrested Trenisha Webster on her porch after she refused to comply with their requests to check on her daughter's welfare. Webster

sued them under 42 U.S.C. § 1983 and Iowa tort law.  The district court[1] granted summary judgment to Webster on her § 1983 claim and denied qualified immunity to the detectives.  They appeal; we affirm.

I.

School officials contacted the Iowa Department of Human Services after a school nurse found marks, abrasions, and bruising on seven-year-old L.B.'s legs. L.B. explained that her father, Robert Rushing, caused the injuries when he disciplined her with a belt after she got in trouble at school.  L.B. said that her mother, Trenisha Webster, is usually in charge of punishment, but that night Rushing took over because Webster was feeling sick.  DHS opened a child abuse investigation and assigned it to Melissa Krug, a social worker.  Krug interviewed L.B. at school and took several photographs.  Then she went to speak with Webster. Webster refused to talk to Krug, allow her inside the house, or let her check on her two children.  Afterwards, Krug's supervisor told her to return to Webster's house with police.  Krug came back later that day with four law enforcement officials:  two Des Moines police officers and two detectives from the family conflict unit, Jennifer Westlake and Lori Kelly.

The entire exchange between Webster and the detectives was captured by body camera.[2]  When Webster answered the door, Detective Westlake confronted her with pictures of L.B.  Webster denied that they depicted injuries, instead calling them "a marking of a punishment." *Webster v. Westlake*, No. 4:19-CV-00302-RP-HCA, 2021 WL 3566432, at *2 (S.D. Iowa Feb. 24, 2021).  She also disagreed that the marks were evidence of excessive punishment.  When Westlake asked to see L.B., Webster said that she was "fine" and "with me." *Id.* at *2, *4.  Westlake

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

[2]A complete transcript was included in the district court's summary judgment order.  *Webster v. Westlake*, No. 4:19-CV-00302-RP-HCA, 2021 WL 3566432, at *2–*5 (S.D. Iowa Feb. 24, 2021).

explained that she needed to check on L.B. and form a safety plan with the parents. Webster said Westlake could come inside and discuss the incident at her dinner table, but she insisted that the other officers remain outside because she didn't trust DHS. Westlake declined and asked Webster, Rushing, and the kids to come to the police station instead. After about six minutes of arguing in circles, Westlake arrested Webster for "interference in [her] investigation." *Id.* at *4. Webster was charged with interference with official acts the next day. The charges were later dismissed with prejudice.

Webster sued Westlake and Kelly under 42 U.S.C. § 1983 for violating her Fourth Amendment rights and for false arrest and abuse of process under Iowa law. She also sued the City of Des Moines on a theory of *respondeat superior*. Each party filed a motion for summary judgment. The district court denied summary judgment to the defendants and denied qualified immunity to Westlake and Kelly. It granted summary judgment to Webster on the merits of her Fourth Amendment and false arrest claims. The court then set a trial to determine Webster's damages on those claims, and resolve the merits of the abuse of process claim against the detectives and the City's *respondeat superior* liability. The defendants filed an interlocutory appeal challenging the district court's summary judgment order and denial of qualified immunity.

II.

First, we address our jurisdiction. The defendants urge us to review the district court's decision to deny summary judgment on all four of Webster's claims. But our limited interlocutory jurisdiction does not reach so far. Generally, a district court's denial of summary judgment is not appealable. *See Acton v. City of Columbia*, 436 F.3d 969, 973 (8th Cir. 2006). But when a district court denies qualified immunity, that decision is immediately appealable. *Hoyland v. McMenomy*, 869 F.3d 644, 651 (8th Cir. 2017). Interlocutory review of a denial of qualified immunity doesn't extend to other issues unless they are "inextricably intertwined" with the qualified immunity defense. *White v. McKinley*, 519 F.3d 806,

815 (8th Cir. 2008) (quotation omitted). When a ruling on the merits of qualified immunity also resolves pendent claims, those issues are "inextricably intertwined" with qualified immunity; the issues are not inextricably intertwined if resolving each requires an "entirely different analysis." *Id.*

"[A]n appellant must prove that necessary preconditions to the exercise of appellate jurisdiction . . . have been fulfilled." *Porchia v. Norris*, 251 F.3d 1196, 1198 (8th Cir. 2001); *see also V S Ltd. P'ship v. Dep't of Hous. & Urb. Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000) ("The burden of proving subject matter jurisdiction falls on the plaintiff." (citation omitted)). Although the defendants ask us to extend our interlocutory review to the district court's rulings on false arrest, abuse of process, and *respondeat superior*, they failed to explain how those issues are inextricably intertwined with qualified immunity.[3] As a result, they did not meet their burden to show appellate jurisdiction, and we will limit our review to qualified immunity.

## III.

State officials are entitled to qualified immunity in § 1983 lawsuits unless they violated a federal "statutory or constitutional right that was clearly established at the time." *City & Cnty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015) (quotation omitted). To decide whether an official is entitled to qualified immunity, we conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate a constitutional or statutory deprivation; and (2) whether the right was clearly established at the time. *Solomon v. Petray*, 795 F.3d 777, 786 (8th

---

[3]Although there may be state-law immunities implicated by the district court's denial of summary judgment on Webster's state-law claims, the detectives' notice of appeal specifies that they are appealing only the qualified-immunity determination. For this reason, any state-law immunities, and the claims that go with them, are not before us. *See Shannon v. Koehler*, 616 F.3d 855, 865 n.7 (8th Cir. 2010).

Cir. 2015). We may decide which step to address first. *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc).

"We review a district court's qualified immunity determination on summary judgment de novo, viewing the record in the light most favorable to [the plaintiff] and drawing all reasonable inferences in [her] favor." *Hoyland*, 869 F.3d at 648 (citation omitted). We "accept as true the facts that the district court found were adequately supported, as well as the facts the district court likely assumed." *Id.* at 648–49 (citation omitted) (cleaned up). When reviewing qualified immunity, "we can consider [only] the legal question whether, in view of the facts that the district court deemed sufficiently supported for summary judgment purposes, the individual defendants' conduct was objectively reasonable given their knowledge and the clearly established law." *Id.* at 651 (citation omitted).

A.

The district court found that the detectives violated Webster's Fourth Amendment right to be free from unreasonable seizure. The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest violates the Fourth Amendment unless it is supported by probable cause. *See Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011). Probable cause exists when the totality of circumstances at the time of arrest would lead a reasonable person to think the defendant committed or is committing a crime. *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013).

The detectives arrested Webster for interference with official acts. "A person commits interference with official acts when the person knowingly resists or obstructs anyone known by the person to be a peace officer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer." Iowa Code § 719.1(1)(a). To "resist" means to engage in opposition with the officer, using actual or constructive force, such that it is "reasonably necessary for the officer

to use force to carry out his duty." *State v. Donner*, 243 N.W.2d 850, 854 (Iowa 1976). To "[o]bstruct is broader than [to] resist and includes putting obstacles in the path of officers completing their duties." *State v. Sullivan*, 764 N.W.2d 783, 783 (Iowa Ct. App. 2009) (unpublished). Section 719.1(1)(a) requires "active interference"—mere objection or failure to cooperate with officers is not enough. *State v. Smithson*, 594 N.W.2d 1, 2 (Iowa 1999). Physical force, however, is not required. *Donner*, 243 N.W.2d at 854.

The defendants argue that Iowa Code § 232.71B(3)(a) gives the detectives a lawful duty to ensure L.B.'s welfare and that it doesn't allow a parent to deny them access to the child. That provision states:

> The [D]epartment [of Human Services] shall apply protocols . . . to prioritize the actions taken in response to a child abuse assessment and shall work jointly with child protection assistance teams and law enforcement agencies in performing assessment and investigative processes for child abuse assessments in which a criminal act harming a child is alleged. The county attorney and appropriate law enforcement agencies shall also take any other lawful action which may be necessary or advisable for the protection of the child.

§ 232.71B(3)(a). Because Webster refused to let the detectives see L.B.—either on the porch or in the house—they suggest that Webster knowingly prevented them from performing their duty, giving them probable cause to arrest her for interference with official acts.

We disagree. Iowa Code § 232.71B(3)(a) imposes a duty on law enforcement to support the DHS and ensure child safety. It does not, however, impose any obligation on citizens. Nor does it abrogate a citizen's constitutional protections. Moreover, § 232.71B(3)(a) only allows law enforcement to take *lawful* actions to protect a child. So—and this almost goes without saying—the acts that officers can take to fulfill their duty are bound by the Constitution. This is not to say that law

enforcement has no options. Court orders—such as warrants or removal orders—are lawful constitutional options.

Here, two key constitutional protections were at play. First, the Fourth Amendment prohibits law enforcement from entering a home without a warrant, absent a recognized exigency or exception.[4] *Payton v. New York*, 445 U.S. 573, 589–90 (1980). And "the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000); *see also K.D. v. Cnty. of Crow Wing*, 434 F.3d 1051, 1056 (8th Cir. 2006), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (describing the "extremely limited" exigent circumstances in which a child can be removed from a parent's custody without a court order). When law enforcement arrived at Webster's house, L.B. was inside. The detectives could have pursued a warrant, or looked for an exigency or exception to the warrant requirement authorizing entry into the home. Or they could have sought a removal order compelling Webster to produce L.B. But they did none of these, which means they could not lawfully enter the home without Webster's consent, nor force her to take any specific action with respect to L.B.

As a result, there were only two lawful ways the detectives could check on L.B.'s welfare: (1) convince Webster to bring L.B. outside or (2) obtain Webster's consent to enter her home. Either way, they needed Webster's cooperation. She declined, but she did not physically impede the detectives or set up additional obstacles between them and L.B. She simply refused to comply with the officer's request to remove the obstacle already in existence—the constitutionally protected barrier of her home—which was nothing more than a failure to cooperate. Because passive failure to cooperate with law enforcement is not by itself resistance or obstruction under § 719.1(1)(a), *see Smithson*, 594 N.W.2d at 3, the detectives did not have probable cause to arrest Webster for interference with official acts. And because the arrest was both warrantless and unsupported by probable cause, the

---

[4]No such exception is argued here.

detectives violated Webster's Fourth Amendment right to be free from unreasonable seizures.

B.

Although the detectives violated Webster's Fourth Amendment rights, they are entitled to qualified immunity if the right was not clearly established on October 16, 2018. *Pearson*, 555 U.S. at 244. "It is clearly established that a warrantless arrest, unsupported by probable cause, violates the Fourth Amendment." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (per curiam). Further, citizens enjoy the right to refuse or terminate voluntary encounters with police. *See United States v. Mendenhall*, 446 U.S. 544, 553 (1980) ("Police officers enjoy the liberty (again, possessed by every citizen) to address questions to other persons, although ordinarily the person addressed has an equal right to ignore his interrogator and walk away." (quoting *Terry v. Ohio*, 392 U.S. 1, 31, 32–33 (1968) (Harlan, J. concurring) (cleaned up)).

However, the detectives would be entitled to qualified immunity if they had "arguable probable cause" to arrest Webster for interference with official acts. *Baribeau*, 596 F.3d at 478. "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Borgman*, 646 F.3d at 523 (quotation omitted). "[T]he existence of probable cause or arguable probable cause depends on the viewpoint of an objectively reasonable officer, not the viewpoint of the particular arresting officer." *Ulrich*, 715 F.3d at 1060 (citation omitted).

We think the detectives lacked arguable probable cause to arrest Webster. They thought they had probable cause because of a mistake of law—that Webster's actions legally classified as resistance or obstruction under § 719.1(1)(a). But that mistake was not objectively reasonable. *See United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("[O]fficers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable."),

*abrogation on other grounds recognized by United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021). As discussed above, Iowa case law from 1999 on establishes that mere failure to cooperate with an officer's requests does not violate § 719.1(1)(a). *Smithson*, 594 N.W.2d at 3; *see also, e.g.*, *State v. Betts*, 885 N.W.2d 217, 217 (Iowa Ct. App. 2016) (unpublished); *State v. Carey*, 852 N.W.2d 20, 20 (Iowa Ct. App. 2014) (unpublished). Both Westlake and Kelly testified that their detective's training included the relevant case law interpreting § 719.1(1)(a). A reasonable officer in the detectives' position would have known that Webster's passive refusal to cooperate was not interference with an official act and did not create probable cause for arrest. As a result, the detectives lacked even arguable probable cause.

Nonetheless, qualified immunity may apply if there was probable cause or arguable probable cause to arrest Webster for *any* crime at the time of the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). The only other potential offense at the time of arrest was child endangerment.[5] As relevant here, the Iowa child endangerment statute makes it an offense if a parent:

> By an intentional act or series of intentional acts, uses unreasonable force, torture or cruelty that results in bodily injury, or that is intended to cause serious injury.

> By an intentional act or series of intentional acts, evidences unreasonable force, torture or cruelty which causes substantial mental or emotional harm to a child or minor.

Iowa Code § 726.6(1)(b), (c). Although the detectives may have had probable cause to arrest Rushing for this offense, that probable cause or arguable probable cause did not extend to Webster. L.B. told school officials that Webster sometimes hits her with a belt. But L.B. didn't speak to the amount of force her mother used or whether

---

[5]The detectives did not identify any other possible offenses. To the extent there may have been probable cause of another offense, that argument is waived. *Bough v. Berryhill*, 681 F. App'x 561, 561 n.3 (8th Cir. 2017) (per curiam).

injuries resulted. Her visible injuries, she said, were all caused by Rushing. So the "totality of facts" did not justify a prudent person in believing that Webster both used unreasonable force and caused bodily, mental, or emotional harm to L.B. *See Stoner v. Watlingten*, 735 F.3d 799, 803 (8th Cir. 2013).

Because the detectives did not have arguable probable cause to arrest Webster for interference with official acts, and they likewise didn't have arguable or actual probable cause to arrest her for another offense, her Fourth Amendment right to be free from warrantless arrests under these circumstances was clearly established on October 16, 2018. And because the detectives subjected Webster to a warrantless arrest that was unsupported by probable cause, they violated her clearly established rights. The detectives are not entitled to qualified immunity.

IV.

For the foregoing reasons, we affirm.

_____