# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-3261

———————————————

Michael Cunningham

*Plaintiff - Appellee*

v.

Trooper Amanda Kahler, individually and in her official capacity

*Defendant*

Colonel Eric Olson, in his individual capacity; Colonel Michael A. Turner, in his official capacity

*Defendants - Appellants*

————————

Appeal from United States District Court
for the Western District of Missouri - Springfield

————————

Submitted: November 19, 2025
Filed: April 2, 2026

————————

Before BENTON, GRASZ, and STRAS, Circuit Judges.

————————

GRASZ, Circuit Judge.

A Missouri State Highway Patrol (MSHP) trooper arrested Michael Cunningham for possessing a firearm as a convicted felon even though a Missouri

state court had expunged his only prior felony conviction. Cunningham then sued under 42 U.S.C. § 1983, seeking damages for false arrest and prospective relief preventing the MSHP from disseminating expunged convictions in a manner that will lead to future false arrests. MSHP Superintendent Colonel Eric Olson moved to dismiss Cunningham's § 1983 claims under sovereign and qualified immunity, and the district court[1] denied Olson both forms of immunity. We affirm.

## I. Background

Cunningham had a felony conviction in Missouri that was expunged in November 2021. About six months later, he was rear-ended on his way to work in Springfield, Missouri, and MSHP Trooper Amanda Kahler responded. Kahler noticed a handgun in Cunningham's car, so she contacted her dispatcher to check Cunningham's criminal history. The dispatcher then provided her with Cunningham's criminal history report, which was maintained by the MSHP. Cunningham's report listed his prior conviction along with "a small notation" that the conviction was "**Closed Pursuant to Chapter 610 RSMo**." But the MSHP does not train its troopers to understand that this notation denotes an expunged conviction. So despite the notation, Kahler arrested Cunningham for possessing a firearm as a convicted felon. *See* Mo. Rev. Stat. § 571.070.1(1). When Cunningham told her his conviction was expunged, Kahler responded that "she was aware of the expungement statute and its implications" but "had to rely on the information from the criminal history report."

After his arrest, Cunningham sued Kahler, Olson, and the MSHP in Missouri state court, and the defendants removed the case to federal court. Relevant here, Cunningham asserted two § 1983 claims against Olson: (1) an official-capacity claim for prospective relief based on the risk of future arrests and (2) an individual-capacity, failure-to-train claim seeking damages for his arrest. The district court

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

denied Olson's motion to dismiss the first claim under sovereign immunity and the second under qualified immunity, so Olson took this interlocutory appeal. While the appeal was pending, Colonel Michael A. Turner replaced Olson as the MSHP's superintendent, and he was automatically substituted as the appellant with respect to Cunningham's official-capacity claim. *See* Fed. R. App. P. 43(c)(2).

## II. Analysis

We begin with Turner, who argues the district court erred by denying him sovereign immunity against Cunningham's official-capacity claim. *See* Fed. R. Civ. P. 12(b)(1). "Claims against state officials acting in their official capacities are considered claims against the State and therefore subject to sovereign immunity." *Bio Gen LLC v. Sanders*, 142 F.4th 591, 604 (8th Cir. 2025). If sovereign immunity applies, it deprives courts of subject-matter jurisdiction. *Worth v. Jacobson*, 108 F.4th 677, 684 n.3 (8th Cir. 2024), *cert. denied*, 145 S. Ct. 1924 (2025). "The existence of subject-matter jurisdiction is a question of law" that we review de novo. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *ABF Freight Sys., Inc. v. Int'l Bhd. of Teamsters*, 645 F.3d 954, 958 (8th Cir. 2011)).

"In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack — where it looks only to the face of the pleadings — and a factual attack — where it may consider matters outside the pleadings." *Croyle ex rel. Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). We are "bound by the district court's characterization of the Rule 12(b)(1) motion." *Id.* at 380–81. When considering a facial attack, "the court looks only at the pleadings and gives the non-moving party the same protections available under Rule 12(b)(6)." *Smith v. UnitedHealth Grp. Inc.*, 106 F.4th 809, 813 (8th Cir. 2024). Here, the district court evaluated Turner's motion under the Rule 12(b)(6) standard. So we treat Turner's motion as a facial attack, "accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party." *Sabri v. Whittier All.*, 833 F.3d 995, 998 (8th Cir. 2016) (quoting *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014)). From this vantage, we

consider whether Cunningham plausibly pleads an exception to sovereign immunity. *See Brownback v. King*, 592 U.S. 209, 217 (2021).

States enjoy sovereign immunity from suits by private individuals in federal court under the Eleventh Amendment, and "[s]tates also enjoy a broader sovereign immunity, which applies against *all* private suits, whether in state or federal court." *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (quoting *Beaulieu v. Vermont*, 807 F.3d 478, 483 (2d Cir. 2015)). When a state removes a case to federal court, it waives its Eleventh Amendment immunity. *Id.* But its general state sovereign immunity remains intact unless the state waives it or an exception applies. *Id.* at 742–43. One "narrow exception" to state sovereign immunity is the *Ex parte Young* doctrine, which "allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

*Ex parte Young* applies when the "complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)). The official sued must also have "some connection" to enforcing the challenged law, but the official need not have primary enforcement authority or even the full power to redress the plaintiff's injury. *Church*, 913 F.3d at 748 (quoting *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017)); *see also 281 Care Comm. v. Arneson*, 638 F.3d 621, 632–33 (8th Cir. 2011). Rather, a sufficient connection exists when the official has "'*methods* of enforcement' for the challenged law at [his] disposal." *Bio Gen LLC*, 142 F.4th at 604 (quoting *Church*, 913 F.3d at 749). "So long as a state official is giving effect to a state statute in a manner that allegedly injures a plaintiff and violates his constitutional rights, . . . *Ex parte Young* permits [the plaintiff's] suit challenging the constitutionality of the [official's] implementation." *McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018).

Cunningham seeks prospective relief, alleging the MSHP causes false arrests by marking expunged convictions with a vague notation and then disclosing those convictions to officers without training them to understand the notation's meaning. But Turner claims *Ex parte Young* does not apply to him because he lacks a sufficient connection to enforcing the statutes that govern how the MSHP maintains and disseminates criminal history reports. We disagree.

Missouri law requires the MSHP's superintendent to "collect, compile and keep available . . . information as is deemed necessary for the detection of crime and identification of criminals." Mo. Rev. Stat. § 43.120.4. The superintendent executes this duty through the central repository, which is "the division within the [MSHP] responsible for compiling and disseminating complete and accurate criminal history records . . . ." *Id.* § 43.500(2). Expungement closes (i.e., makes confidential) conviction records. *Id.* §§ 610.140.8, .120.1. But the central repository still disseminates closed records to certain parties, including Missouri law enforcement agencies. *Id.* § 610.120.1. When disseminating criminal history information, the central repository must follow administrative rules promulgated by the Missouri Department of Public Safety's (MDPS) director. *Id.* §§ 610.120.2, 43.509; *see also id.* § 650.005.2 (placing the MSHP within the MDPS). And the central repository may promulgate its own "regulations governing the security and privacy of criminal history record information . . . ." *Id.* § 43.515.

While the MDPS's director may have the primary authority to enforce these statutes by implementing regulations, *see id.* § 43.509, Turner also has methods of enforcing them. *See Bio Gen LLC*, 142 F.4th at 604. The central repository is a division of the MSHP under Turner's command. *See* §§ 43.500(2), .030.2(1). Missouri law charges the central repository with enforcing sections 610.120 and 43.509 by disseminating criminal history records and promulgating regulations governing the privacy of those records. *See id.* §§ 43.500(2), .515. Since Turner's subordinates in the central repository disseminate criminal history records, he enforces sections 610.120 and 43.509 through them. Turner's command reasonably implies the authority to direct how his subordinates disseminate and regulate the

-5-

privacy of expunged convictions. *See Calzone*, 866 F.3d at 870 (holding superintendent was connected to enforcement of statute when superintendent directed patrol officers on its implementation). That makes Turner a proper *Ex parte Young* defendant.

Turner raises two unpersuasive arguments to the contrary. First, he disclaims a connection to enforcing the statutes because "court clerks (not colonels) are responsible for transmitting records to the Central Repository." This argument fails because Cunningham does not complain about how court clerks provide criminal history information to the central repository. Rather, he challenges how the central repository disseminates that information to police officers in the field. Second, Turner claims he "does not run the Central Repository." But the MSHP's superintendent has command over the agency, and the central repository is a division of the MSHP. *See* §§ 43.500(2), .030.2(1). As the MSHP's General Orders make clear, the central repository answers to the superintendent through the agency's chain-of-command. Mo. State Highway Patrol, Administrative Responsibilities and Division Function, Gen. Ord. No. 11-02, at 3–4, 17, 19 (Dec. 19, 2024); *see also* Mo. State Highway Patrol, Principles of Organization, Gen. Ord. No. 11-01, at 1 (Mar. 20, 2020) ("The superintendent is ultimately responsible for all the [MSHP] does or fails to do and cannot shift that responsibility to any other individual.").

Turning to Olson, we review de novo the denial of his motion to dismiss Cunningham's individual-capacity claim. *Elder v. Gillespie*, 54 F.4th 1055, 1063 (8th Cir. 2022); *see also* Fed. R. Civ. P. 12(b)(6). "To state a § 1983 claim against a supervisor for a failure to train, [a plaintiff] must first allege that the supervisor's subordinate committed a constitutional violation." *Mitchell v. Saint Louis County*, 160 F.4th 950, 961 (8th Cir. 2025). The plaintiff must then allege that the supervisor's "deliberate indifference to the offensive conduct and failure to take adequate remedial action proximately caused the injury." *Saunders v. Thies*, 38 F.4th 701, 716 (8th Cir. 2022) (quoting *Cox v. Sugg*, 484 F.3d 1062, 1066 (8th Cir. 2007)). Although Cunningham asserts Kahler falsely arrested him because Olson failed to train his troopers to recognize the MSHP's expungement notation, Olson disputes

whether an underlying constitutional violation occurred and if so, whether he was deliberately indifferent.

First, we conclude Cunningham has sufficiently pled an underlying constitutional violation. "A warrantless arrest is unreasonable and 'violates the Fourth Amendment unless it is supported by probable cause.'" *Nieters v. Holtan*, 83 F.4th 1099, 1105 (8th Cir. 2023) (quoting *Webster v. Westlake*, 41 F.4th 1004, 1010 (8th Cir. 2022)). Probable cause exists when the totality of the circumstances known to the officer "at the time of the arrest [is] sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Id.* (quoting *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1009 (8th Cir. 2017)). Cunningham alleges Kahler saw his criminal history report bearing the notation "**Closed Pursuant to Chapter 610 RSMo**," and he told her his conviction was expunged. Despite knowing about "the expungement statute and its implications," Kahler arrested Cunningham anyway. Viewing the allegations in the light most favorable to Cunningham, Kahler should have known his conviction was expunged, so she arrested him without probable cause.

Olson presents two opposing arguments, both of which lack merit. He starts by arguing that "Missouri's expungement framework allows individuals with expunged records to nevertheless be liable for unlawful possession of a firearm." The expungement statute once required expunged conviction records to be "destroy[ed]." § 610.140.6 (effective Aug. 28, 2012). But in 2018, Missouri's General Assembly amended the statute, requiring expunged conviction records to be "close[d]" and permitting law enforcement agencies to use an expunged conviction "as a prior offense, violation, or infraction." *Id.* § 610.140.7, .12 (effective Jan. 1, 2018). These amendments — so the argument goes — now permit felon-in-possession charges in Missouri to be predicated on an expunged felony.

This argument verges on frivolous. For one, the Missouri Supreme Court has twice stated Missouri's felon-in-possession law "does not apply to felony convictions that have been pardoned or expunged . . . ." *State v. McCoy*, 468 S.W.3d

892, 899 (Mo. 2015); *State v. Merritt*, 467 S.W.3d 808, 815 (Mo. 2015). Though Olson brushes these cases aside because they predate the 2018 amendments to § 610.140, the Missouri Supreme Court has favorably cited *McCoy*'s expungement holding following the amendments. *See Alpert v. State*, 543 S.W.3d 589, 597 (Mo. 2018). While the amendments permitted an expunged conviction to be used "as a prior offense, violation, or infraction," § 610.140.12 (effective Jan. 1, 2018), this use was "intended to prevent a person from avoiding consequences . . . should the person commit subsequent offenses." *T.V.N. v. Mo. State Highway Patrol Crim. Just. Info. Servs.*, 592 S.W.3d 74, 82 (Mo. Ct. App. 2019). "[T]his purpose is distinguished, however, from a petitioner's right to be relieved of the collateral consequences of an earlier conviction by having previously limited rights restored." *Id.*

The expungement statute's text further reinforces this conclusion. In 2022, at the time of Cunningham's arrest, the statute explicitly provided that expungement orders would restore the right to possess a firearm under federal law. § 610.140.8 (effective Aug. 28, 2021) (citing 18 U.S.C. § 921(a)(33)(B)(ii)). And it stated an expunged conviction would "not be grounds for automatic disqualification" for a concealed-carry permit. *Id.* § 610.140.9; *accord R.F. v. Owen*, 596 S.W.3d 221, 224–26 (Mo. Ct. App. 2020). It would, of course, be oddly self-defeating to ensure that individuals with expunged convictions could possess firearms under federal law but not under Missouri law. And it would be illogical to allow those with expunged felonies to acquire concealed-carry permits if they were still prohibited from possessing firearms under Missouri's felon-in-possession statute.

Olson next contends Kahler had probable cause because "reasonable minds could differ as to the effect of [Cunningham]'s expungement on his future liability for unlawful possession of a firearm." On the contrary, the legal effect of expungement was clearly established under Missouri law when Kahler arrested Cunningham. *See, e.g.*, *Alpert*, 543 S.W.3d at 597. And "officers have an obligation to understand the laws that they are entrusted with enforcing, at least to a level that is objectively reasonable." *United States v. Forjan*, 66 F.4th 739, 746 (8th Cir. 2023) (quoting *United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006)). So any

belief that Cunningham's expunged conviction could support a felon-in-possession charge was unreasonable and could not support probable cause. *See Ross v. City of Jackson*, 897 F.3d 916, 922 (8th Cir. 2018).

Second, we conclude Cunningham has sufficiently pled deliberate indifference. To plead deliberate indifference, a plaintiff "must allege that the supervisor 'had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.'" *Mitchell*, 160 F.4th at 961 (quoting *Livers v. Schenck*, 700 F.3d 340, 356 (8th Cir. 2012)). This often occurs when the supervisor fails to take sufficient remedial action despite knowing about a pattern of his subordinates violating clearly established rights. *See id.*; *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). According to Cunningham's complaint, Olson had notice that the MSHP's expungement-notation policy "resulted in the arrest of other citizens for possession of a weapon where the underlying felony had been expunged." This means Olson allegedly knew his troopers were violating clearly established Fourth Amendment rights based on confusing or misleading criminal history information disseminated by the MSHP. Yet he allegedly failed to clarify the MSHP's notation or train his troopers to understand it. These allegations suffice to plead deliberate indifference.

## III. Conclusion

We affirm the district court's denial of Turner's motion to dismiss based on sovereign immunity and its denial of Olson's motion to dismiss based on qualified immunity.

—————————————————